CONSOLIDATED MINES OF CALIFORNIA et al. v. SECURITIES AND EXCHANGE COMMISSION.

No. 8783.

Circuit Court of Appeals, Ninth Circuit.

June 30, 1938.

---

[5] Affirming D.C., 22 F.2d 450.

John H. Alvord, of Los Angeles, Cal., for appellants.

Allen T. Throop, Gen. Counsel, SEC, and Thomas J. Lynch, Asst. Gen. Counsel, both of Washington, D. C. (Francis Thornton Greene and Herbert B. Cohn, both of Washington, D. C., of counsel), and Howard A. Judy and John G. Sobieski, Attys. SEC, both of San Francisco, Cal., for appellee.

Before GARRECHT, STEPHENS, and HEALY, Circuit Judges.

HEALY, Circuit Judge.

The Securities and Exchange Commission, under authority of § 22(b) of the Securities Act of 1933, 15 U.S.C.A. § 77v (b), applied to the district court to enforce compliance with a subpoena duces tecum directed against appellants in the course of an investigation ordered by the Commission. From an order directing obedience to the subpoena, this appeal was taken.

The appellant Consolidated Mines of California is a California corporation, operating in Calaveras County. Appellants Wikoff and Tyler are respectively its president and secretary. On November 5, 1937 the Commission, pursuant to § 20(a) of the Securities Act of 1933, 15 U.S.C.A. § 77t(a), ordered an investigation of the facts concerning alleged violations by appellants of §§ 5 and 17(a) of the act, 15 U.S.C.A. §§ 77e, 77q(a). These latter are shown on the mar-

gin.[1] Pursuant to § 19(b), 15 U.S.C.A. § 77s(b),[2] officers were appointed for the purpose of the investigation and empowered to require the attendance of witnesses and the production of documentary evidence deemed relevant to the inquiry. A copy of the order is annexed to the application filed with the court.

It sufficiently appears from its application and the showing made in support of it that the Commission was in possession of information affording reasonable grounds for the belief that the appellant corporation and its officers, although no registration statement was in effect as to its securities, had for a long period been engaged in the sale of the corporation's stock; further, that during the same period these securities were being marketed on the basis of untrue statements concerning the extent and value of ore bodies and the profits to be derived by the corporation from its operations.

Prior to ordering the investigation, the Commission had received complaints and information tending to establish that those in charge of the affairs of the appellant corporation had undertaken to sell its stock in interstate commerce and through the use of the mails. In these efforts it was represented that the company possessed ore bodies running from $18.00 to $38.53 per ton; that the company could have shown a good profit on ore of an average value of $10.00 per ton, due to low costs of milling; that "our engineers report that we now have enough ore blocked out to justify the erection of the mill with assurance that we have sufficient ore for continuous operation"; that "our assays show that the value of the ore we have developed is much higher than we had anticipated. An average of several hundred assays runs in the neighborhood of $35.00"; that the company's mill had been producing steadily and that its capacity was being increased. The Commission had information that these representations were false and misleading, and that in fact the company had operated at a substantial loss from its organization to as late as September 30, 1937, the latest date as to which figures were made available to the Commission's investigators.

Acting upon this information, the Commission issued its order to determine whether infractions of §§ 5 and 17 of the act had in fact taken place or were threatened. The

[1] Sec. 5. "(a) Unless a registration statement is in effect as to a security, it shall be unlawful for any person, directly or indirectly——

"(1) to make use of any means or instruments of transportation or communication in interstate commerce or of the mails to sell or offer to buy such security through the use or medium of any prospectus or otherwise; or

"(2) to carry or cause to be carried through the mails or in interstate commerce, by any means or instruments of transportation, any such security for the purpose of sale or for delivery after sale.

"(b) It shall be unlawful for any person, directly or indirectly——

"(1) to make use of any means or instruments of transportation or communication in interstate commerce or of the mails to carry or transmit any prospectus relating to any security registered under this title [subchapter], unless such prospectus meets the requirements of section 10[77 j]; or

"(2) to carry or to cause to be carried through the mails or in interstate commerce any such security for the purpose of sale or for delivery after sale, unless accompanied or preceded by a prospectus that meets the requirements of section 10 [77 j]."

Sec. 17. "(a) It shall be unlawful for any person in the sale of any securities by the use of any means or instruments of transportation or communication in interstate commerce or by the use of the mails, directly or indirectly——

"(1) to employ any device, scheme, or artifice to defraud, or

"(2) to obtain money or property by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

"(3) to engage in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon the purchaser."

[2] Sec. 19. "(b) For the purpose of all investigations which, in the opinion of the Commission, are necessary and proper for the enforcement of this title [subchapter], any member of the Commission or any officer or officers designated by it are empowered to administer oaths and affirmations, subpœna witnesses, take evidence, and require the production of any books, papers, or other documents which the Commission deems relevant or material to the inquiry. Such attendance of witnesses and the production of such documentary evidence may be required from any place in the United States or any Territory at any designated place of hearing."

officers of the Commission designated to conduct the investigation issued subpoenas directed to the corporation and to appellants Wikoff and Tyler, the latter being ordered to appear at the investigation to be held on November 22, 1937, and there produce the following:

"1. All the engineers' reports, together with covering letters, exhibits, supporting data and supplements in the possession of the company, concerning the McKisson, Grand Prize and/or Mineral Lode Properties in Calaveras County, California.

"2. All mining records and assay records in the possession of Consolidated Mines of California, pertaining to the McKisson, Grand Prize and/or Mineral Lode Properties in Calaveras County, California, for the period from January 1, 1934, to October 1, 1937, including all sampler's books assay certificates, assay records, sample maps, the assay and routine records of the McKisson mill, with the head assays, tail assays, concentrate assays, records of tonnage handled, plus the daily records of mill operation, smelter settlement sheets and mint returns, all reports from officers or employees at the properties, all ore reserve estimates including tonnage and grade calculations and maps relative thereto, all records of receipts and disbursements pertaining to any of said properties, including payroll records, material and equipment purchases, maintenance accounts and segregation records showing segregation of receipts and disbursements against development, mining, milling, selling or other costs; the general journal and general ledger of the company concerning said properties, all said records being for the period from January 1, 1934, to October 31, 1937."

The appellants failed to appear, advising the Commission's representative that they would refuse to respond to the subpoena until so ordered by the court. The order subsequently made by the trial court required the production of the documentary evidence called for in the subpoena.

█ It is urged that the application for the production order was defective in that it did not allege that any complaint or statement of facts respecting the claimed violation of the statute had been filed with the Commission. It is said that § 20(a) requires such complaint or statement as prerequisite to an investigation. This court, in Woolley v. United States, 9 Cir., 97 F.2d 258, has held otherwise. § 20(a) provides that "whenever it shall appear to the Commis-

sion, either upon complaint or otherwise, that the provisions of this title [subchapter], or of any rule or regulation prescribed under authority thereof, have been or are about to be violated, it may, in its discretion, either require or permit such person to file with it a statement in writing, under oath, or otherwise, as to all the facts and circumstances concerning the subject matter which it believes to be in the public interest to investigate, and may investigate such facts." If the Commission is in possession of facts affording reasonable grounds for the belief that a violation of the act has occurred or is threatened, it may order an investigation. The form of the information or its source is not material.

█ The appellants do not deny that sales were made and solicited, or that the mails and the means and instruments of communication in interstate commerce were used for this purpose. They say, however, that the sales were made by appellant Tyler of his personally owned stock, independently of the company. The Commission had substantial evidence to the contrary. Letters soliciting sales or encouraging purchases were written on the stationery of the corporation, and in some instances the signers designated themselves as corporate officers. The proceeds of the securities sold were in part loaned or contributed to the corporation and were used to keep the properties in operation, thereby enabling more stock sales to be effected. Certainly, the facts in the possession of the Commission justified an investigation to determine whether the sales were in truth the individual transactions of Tyler, or were made on behalf or at the behest of the corporation.

█ It appears to be the view of appellants that virtually conclusive evidence of a violation of the act must be in the possession of the Commission before an investigation can be ordered. If this were so there would be no point in conducting an investigation. The very purpose of the inquiry authorized by § 20(a), 15 U.S.C.A. § 77t(a), is to investigate the accuracy of information in the possession of the Commission tending to show a violation, and to aid the Commission in determining whether the facts justify injunction proceedings or the placing of the matter before the Attorney General for the institution of criminal prosecutions. See § 20(b), 15 U.S.C.A. § 77t(b); In re Securities and Exchange Commission, 2 Cir., 84 F.2d 316.

708

 It is urged that the investigation is a "fishing expedition" of the sort condemned in Federal Trade Commission v. American Tobacco Company, 264 U.S. 298, 44 S. Ct. 336, 68 L.Ed. 696, 32 A.L.R. 786; also, that the order for the production of the documents called for is so harsh, sweeping and summary in its terms as to violate the rights of appellants under the Fourth Amendment to the constitution, U.S.C.A.Const.Amend. 4, citing Boyd v. United States, 116 U.S. 616, 6 S.Ct. 524, 29 L.Ed. 746.

We are unable to agree that the order invades the constitutional immunities of the appellants. The materiality of the documentary evidence called for is apparent. The reports of the company's engineers as to the extent of its ore reserves, the values disclosed by assays made, the records of.the company relating to the economy and efficiency of its milling operations and to its mining costs, and the records of returns from concentrates and from sales to the mint, are all pertinent to the subject matter of the investigation. All bear on the truth or falsity of the representations shown to have been made on behalf of the corporation in effecting sales of its securities. The case made out by the Commission abundantly discloses the propriety of the order for the production of these records. From them it may be determined whether the stock-selling campaign was in fact based on representations which were materially false or misleading, and whether the corporation and its officers had acted in bad faith. Newfield v. Ryan, 5 Cir., 91 F.2d 700; McMann v. Securities and Exchange Commission, 2 Cir., 87 F.2d 377, 109 A.L.R. 1445. Compare Smith v. Interstate Commerce Commission, 245 U.S. 33, 38 S.Ct. 30, 62 L.Ed. 135; Wheeler v. United States, 226 U.S. 478, 483, 33 S.Ct. 158, 57 L.Ed. 309; Brown v. United States, 276 U.S. 134, 48 S.Ct. 288, 72 L.Ed. 500.

 Investigations of the sort here under consideration are analogous to those of a grand jury.- In re Securities and Exchange Commission supra; Woolley v. United States, supra. The scope of the inquiries of a grand jury, it has been said, is "not to be limited narrowly by questions of propriety or forecasts of the probable result of the investigation, or by doubts whether any particular individual will be found properly subject to an accusation of crime. As has been said before, the identity of the offender, and the precise nature of the offense, if there be one, normally are developed at the conclusion of the grand jury's labors, not at the beginning." Blair v. United States, 250 U.S. 273, 39 S.Ct. 468, 471, 63 L.Ed. 979; see, also, Norcross v. United States, 9 Cir. 209 F. 13.

Affirmed.