## PENFIELD CO. OF CALIFORNIA v. SECURITIES AND EXCHANGE COMMISSION.

### No. 10487.

Circuit Court of Appeals, Ninth Circuit.

June 30, 1944.

Concurring Opinion July 19, 1944.

Rehearing Denied Aug. 8, 1944.

Morris Lavine, of Los Angeles, Cal., for appellant.

Roger S. Foster, Sol., Milton V. Freeman, Asst. Sol., and Louis Loss, Sp. Counsel, Securities and Exchange Commission, all of Philadelphia, Pa., and Charles J. Odenweller, Jr., Regional Administrator of Securities and Exchange Commission, of Cleveland, Ohio, for appellee.

Before DENMAN, MATHEWS, and STEPHENS, Circuit Judges.

DENMAN, Circuit Judge.

This is an appeal from a final order and decree entered by the district court on June 1, 1943, pursuant to Section 22(b) of the Securities Act of 1933, 15 U.S.C. § 77v(b), 15 U.S.C.A. § 77v(b),[1] hereinafter called the Act. That order directed the appellant to comply with a subpoena duces tecum of the Commission requiring it to appear before an officer of the Commission and to produce certain of its corporate books, papers and documents.

On May 14, 1942, the Commission issued an order under Section 20(a), 15 U.S.C.A. § 77t(a), directing an investigation to de-

---

[1] "In case of contumacy or refusal to obey a subpœna issued to any person, any of the said United States courts, within the jurisdiction of which said person guilty of contumacy or refusal to obey is found or resides, upon application by the Commission may issue to such person an order requiring such person to appear before the Commission, or one of its examiners designated by it, there to produce documentary evidence if so ordered, or there to give evidence touching the matter in question; and any failure to obey such order of the court may be punished by said court as a contempt thereof."

termine whether a Kentucky corporation called Bourbon Sales Corporation, together with several individuals, had violated Sections 5 and 17(a) of the Act, 15 U.S.C.A. §§ 77e, 77q(a), in the sale of securities consisting of contracts for the bottling of whiskey. On October 15, 1942, the district court for the Western District of Kentucky directed Bourbon Sales Corporation, in a proceeding similar to this case, to comply with a subpoena of the Commission very like the subpoena directed against the appellant here. Securities and Exchange Commission v. Bourbon Sales Corp., D.C., 47 F.Supp. 70.

The enforcement of that subpoena disclosed information which led the Commission into its present inquiry. It was discovered that the appellant here had for some time been acting as agent for Bourbon Sales Corporation in selling bottling contracts through the mails to persons to whom that company or the appellant had previously sold whiskey warehouse receipts, and that it had subsequently sold its own bottling contracts through the mails in exchange for such receipts. While investigating this phase of the appellant's activities, the Commission learned also for the first time that stock of the appellant was being sold to the public through the mails in exchange for bottling contracts previously issued by either the appellant or Bourbon Sales Corporation. On April 8, 1943, the Commission supplemented its original order of investigation to name the present appellant and A. W. Young, its secretary-treasurer, and to cover the sale of the appellant's stock by the persons named in the supplemental order.

On April 9, 1943, the subpoena here involved was directed to the appellant and Young by C. J. Odenweller, Jr., Regional Administrator of the Commission's Cleveland Regional Office, who was designated in the Commission's orders authorizing the investigation as one of the officers empowered "to administer oaths and affirmations, subpoena witnesses, compel their attendance, take evidence, and require the production of any books, papers, correspondence, memoranda or other records deemed relevant or material to the inquiry." The subpoena required the production of 20 specified items of the appellant's books, papers and documents covering the four-year period from May 1, 1939, to the date of the subpoena.

When the appellant failed to comply with this subpoena, the Commission filed with the district court its application for enforcement under Section 22(b) of the Securities Act, alleging that at the time of the entry of its orders of investigation it "had reasonable grounds to believe that Bourbon Sales Corporation and The Penfield Company of California had violated and [were] about to violate the provisions of Sections 5(a) and 17(a) of the said Act, as more fully appears in the said orders." After the appellant had filed an answer together with two supporting affidavits, a hearing was held and the district court stated that "there should be some showing of relevancy, that is, that there is something about to be done or a probability of the violation of the Securities Law that is in the nature of a criminal violation for a Grand Jury investigation." Mr. Odenweller then filed a statement concerning the materiality and relevancy of the items called for in the two subpoenas, together with nineteen supporting affidavits. It appears from these affidavits that persons who had previously been sold whiskey warehouse receipts by either Bourbon Sales Corporation or the appellant were induced to turn over those receipts to appellant in exchange for bottling contracts or stock; that the bottling contracts were offered or sold through the mails on the representation that the only way the receipt-holders could receive a profit would be by virtue of the skill of Bourbon Sales Corporation or the appellant and their ability to bottle and sell the whiskey with minimum expense and at the highest price; and that the stock was sold through the mails by means of literature which omitted to state its true book value and contained misrepresentations concerning the profit possibilities of appellant.

After the filing of a supplemental answer and counter-affidavits by appellant, a further hearing was held and the district court granted the Commission's application for enforcement of the subpoena, incorporating in its final order and decree the twenty items which the subpoena specified.

The Commission in its opening brief describes the appeal here as "from a final order and decree." On inquiry by the court concerning the Commission's statement, the Commission has responded with an excellent brief contending that the order of the district court enforcing the Commission's subpoena is not a final order

and hence that this appeal should be dismissed. The Commission admits that the case of Ellis v. Interstate Commerce Commission, 237 U.S. 434, 442, 35 S.Ct. 645, 59 L.Ed. 1036, has not been overruled. On the contrary, in Cobbledick v. United States, 309 U.S. 323, 60 S.Ct. 540, 84 L. Ed. 783, the Supreme Court was called upon to decide the principal contention of the appellants there that that case was controlled by the Ellis decision. In disposing of that contention adversely to the appel lants there, the Supreme Court held 309 U.S. at page 330, 60 S.Ct. at page 543, 84 L.Ed. 783:

"* * * But a proceeding like that under § 12 of the Interstate Commerce Act may be deemed self-contained, so far as the judiciary is concerned—as much so as an independent suit in equity in which appeal will lie from an injunction without the necessity of waiting for disobedience. After the court has ordered a recusant witness to testify before the Commission, there remains nothing for it to do. Not only is this true with respect to the particular witness whose testimony is sought; there is not, as in the case of a grand jury or trial, any further judicial inquiry which would be halted were the offending witness permitted to appeal. The proceeding before the district court is not ancillary to any judicial proceeding. So far as the court is concerned, it is complete in itself."

We cannot agree with appellee that what was there said in disposing of the main contention of appellant is mere dictum.

Subsequently, in Clarke v. Federal Trade Commission, 9 Cir., 1942, 128 F.2d 542 this court, not questioning the assumption apparently made by both parties that the Ellis case still governed with respect to administrative subpoenas, held on that premise that a district court order enforcing a subpoena issued by the Federal Trade Commission could not be collaterally attacked by appealing from a subsequent order of commitment for contempt.

Appellee strongly argues that the evolving concept of the administrative investigations as analogous in other features with grand jury procedure requires even an inferior court to overrule the Ellis and Cobbledick cases. Its statement is that "In the present climate of opinion, the distinction between Ellis and Cobbledick *seems* no longer justifiable." (Emphasis supplied.)

We cannot agree that an inferior federal court may make its prognostication of the weather in the Supreme Court chambers, however well fortified in judicial reasoning, and forecast that the Supreme Court "seems" about to overrule its prior decision, and outrun that Court to the overruling goal. It is not a fanciful conjecture that, if such guessing contest were permitted, the ingenuity of judges, stirred by varied philosophies of governmental and social regulations, would find rational arguments for overruling a score of Supreme Court decisions. To the strain on the legal profession of many recent overrulings, some enumerated in the last paragraph of Smith v. Allwright, 321 U.S. 649, 64 S.Ct. 757, should not be added that of the overruling prescience of ten circuit courts of appeals and upwards of ninety district courts.

The question of their jurisdiction is ever present to all courts, not excepting the Supreme Court. In the recent case of Endicott-Johnson Corp. v. Perkins, 317 U.S. 501, 510, 63 S.Ct. 339, 87 L.Ed. 424, instead of dismissing the appeal, that Court held valid the subpoena of the Secretary of Labor and affirmed the order of the circuit court of appeals remanding the case to the district court "with directions to enforce the subpoenas," Perkins v. Endicott-Johnson Corp., 2 Cir., 128 F.2d 208, 227, and this although the opinion of the court of appeals in considering the Ellis case (pages 213 and 216) presented the jurisdictional question for review by the Supreme Court.

A. Appellant claims that the Securities Exchange Commission has no jurisdiction to order appellant corporation to produce for examination by the Commission or its representatives all books, records, documents, contracts, agreements, checks, bank statements, correspondence, files, and all other papers and memoranda of which there were listed twenty items. The jurisdictional defect claimed is the absence of a determination by the Commission itself that these documents and other information sought "in the opinion of The Commission, are necessary." Section 19 (b) (15 U.S.C. § 77s(b), 15 U.S.C.A. § 77s (b), of the Act provides, "For the purpose of all investigations which, in the opinion of the Commission, are necessary and proper for the enforcement of this title, any member of the Commission or any officer or officers designated by it are empowered to administer oaths and affirmations, subpœna witnesses, take evidence, and require the production of any books, papers, or oth-

er documents *which the Commission deems relevant or material to the inquiry.* Such attendance of witnesses and the production of such documentary evidence may be required from any place in the United States or any Territory at any designated place of hearing." (Emphasis supplied.)

It is admitted that the Commission made no determination prior to the issuance of the subpoena that it deemed relevant or material any of the twenty classes of evidentiary matter which the subpoena required appellant to produce. The Commission claims that it does not have to make such a determination but that it may and has delegated its power to make such a determination by its order designating C. J. Odenweller as an officer to issue subpoena to "require the production of any books, papers, correspondence, memoranda or other records deemed relevant or material to the inquiry, and to perform all other duties in connection therewith as authorized by law."

Appellant's argument is that the statute requires that the Commission itself by some formal act must make the determination of the relevancy and materiality of the books, etc. to be produced and that this determination may not be delegated to the regional administrator. We have held the contrary in Woolley v. United States, 9 Cir., 97 F. 2d 258, 262, that:

"It is contended that the commission alone, under the provisions of the act, has authority to determine what matters are material to an inquiry, and that this authority cannot be delegated to the examining officer. The argument is based on the provisions of § 19(b), heretofore quoted. There is nothing in the language of the section to justify the argument. To adopt such interpretation would be to emasculate the provision relating to the appointment of examining officers, and require all proceedings to be conducted by the commission itself."

Cf. Consolidated Mines v. Securities Exchange Commission, 9 Cir., 97 F.2d 704, 707; Endicott-Johnson Corp. v. Perkins, 317 U.S. 501, 63 S.Ct. 339, 87 L.Ed. 424.

■ B. Appellant contends that the whiskey sales contracts are not investment contracts within the term "investment contract" as that phrase is used in Section 2 (1) of the Act,[2] and hence it is beyond the jurisdiction of the Commission to demand evidence concerning transactions in them. They are, it is claimed, no more than warehouse receipts transferred in the ordinary course of business.

We do not agree. The term "investment contract" particularly, which appears in thirty of the state acts, has been construed in a long line of cases, both federal and state, as affording the investing public a full measure of protection, whether the transaction takes one of the more normal forms of a security or whether instead the promoter clothes it with the appearance of a transaction in some species of real or personal property.

■ This court has construed the phrase "investment contract" to include agreements where "the purchasers [look] entirely to the efforts of the promoters to make their investment a profitable one." Atherton v. United States, 9 Cir., 128 F.2d 463, 465. Cf. Securities and Exchange Commission v. C. M. Joiner Leasing Corp., 320 U. S. 344, 352, 64 S.Ct. 120; Securities and Exchange Commission v. Universal Service Association, 7 Cir., 106 F.2d 232, 237, certiorari denied 308 U.S. 622, 60 S.Ct. 378, 84 L.Ed. 519.

The evidence shows the bottling contracts themselves contain agreements by the appellant or Bourbon Sales Corporation to bottle whiskey represented by the whiskey warehouse receipts turned in for the bottling contracts, to sell the bottled whiskey and to pay to the contract-holders the proceeds less all expenses and a commission of 10% of the gross sales price per case. This is aside from the fact that receipt-holders were influenced to accept bottling

---

[2] Under Section 2 (1), 15 U.S.C.A. § 77b(1) "The term 'security' means any note, stock, treasury stock, bond, debenture, evidence of indebtedness, certificate of interest or participation in any profit-sharing agreement, collateral-trust certificate, preorganization certificate or subscription, transferable share, investment contract, voting-trust certificate, certificate of deposit for a security, fractional undivided interest in oil, gas, or other mineral rights, or, in general, any interest or instrument commonly known as a 'security,' or any certificate of interest or participation in, temporary or interim certificate for, receipt for, guarantee of, or warrant or right to subscribe to or purchase, any of the foregoing."

contracts in exchange for their receipts on the representation that that was the only way they could get their money back; that Bourbon Sales Corporation was "a large concern * * * formed to conduct business of this nature and was in the position to protect [their] interest and market the whiskey under an established trade name which would boost the price and make a better profit;" that the appellant was in a "better position to know when [their] whiskey might age and be bottled and * * * would take the risk of loss;" and that they would get "double the amount [they] would by a sale of the bulk whiskey." These contract provisions and representations, as well as the fact that the contract-holders, being ordinary investors and not liquor dealers, would not have the facilities or the necessary federal and state liquor licenses to take the whiskey out of bond and dispose of it, make it clear that they must look "entirely to the efforts of the promoters to make their investment a profitable one," the criterion in our opinion in Atherton v. United States, supra, 128 F. 2d at page 465.

In the second place, the present case is stronger than the Joiner and Atherton cases also because it was represented here that there would be a pooling of the whiskey purchased by the appellant for bottling. In other words, the scheme apparently did not envisage any rigid segregration of the whiskey sold to the company by each contract-holder, but contemplated that each holder, instead of obtaining the proceeds from the sale of the identical whiskey turned over by him, would actually get no more than a right to share in the avails of a mass of whiskey processed by the company.

It follows under all the circumstances that the entire scheme involves in substance a speculative investment in a common enterprise necessarily contemplating complete reliance by the investor upon the appellant's efforts. Hence, (aside from the sales of its stock) the appellant has been selling securities both as agent for Bourbon Sales Corporation and as principal in the sale of its own bottling contracts.

■ C. Appellant claims that appellee's investigation is a general roving inquiry and the subpoena in effect causes an unreasonable search and seizure in violation of the Fourth Amendment. We have held ad-

versely to this contention in Consolidated Mines v. Securities Exchange Commission, 9 Cir., 97 F.2d 704, 707, 708. On the facts adduced the Commission is clearly within its normal function in investigating the conduct of appellant in transactions through the mails concerning its stock and investment contracts. The evidence sought was "not plainly incompetent or irrelevant to any lawful purpose" of the Commission. The twenty items of the subpoena are within the normal area of such an investigation. They more than satisfy the requirement of the Supreme Court in Endicott-Johnson Corp. v. Perkins, supra.

■ D. Appellant contends that the provisions of Section 19(b) of the Act, as amended and supplemented by the provisions of Section 22(b) of the Act, inherently and as construed and applied in this case, are invalid and unconstitutional because they delegate judicial powers to the Securities and Exchange Commission in violation of Article III of the Constitution, and deprive the district courts of judicial functions as to what matters are or are not relevant or material to the inquiry.

As with the two contentions of appellant last cited, we heretofore have fully considered this question. In Coplin v. United States, 9 Cir., 88 F.2d 652, 656-657, and in Consolidated Mines v. Securities Exchange Commission, 9 Cir., 97 F.2d 704, we decided it adversely to appellant's contention.

Ignoring our opinion in the Consolidated Mines case, appellant cites the early circuit court opinion of, then, Circuit Judge Field, In re Pacific Railway Commission, C.C.D. C.Cal., 1887, 32 F. 241. That decision preceded by four years the creation of this court with jurisdiction over appeals from the then circuit court. As long ago as 1894 the Supreme Court, citing Judge Field's opinion, refused to follow it in Interstate Commerce Commission v. Brimson, 154 U.S. 447, 14 S.Ct. 1125, 38 L.Ed. 1047. That Court there held (154 U.S. at page 474, 14 S.Ct. at page 1132, 38 L.Ed. 1047) in language equally applicable to federal regulation in the securities field:

"An adjudication that congress could not establish an administrative body with authority to investigate the subject of interstate commerce, and with power to call witnesses before it, and to require the production of books, documents, and papers relating to that subject, would go far toward

752

defeating the object for which the people of the United States placed commerce among the states under national control. All must recognize the fact that the full information necessary as a basis of intelligent legislation by congress from time to time upon the subject of interstate commerce cannot be obtained, nor can the rules established for the regulation of such commerce be efficiently enforced, otherwise than through the instrumentality of an administrative body, representing the whole country, always watchful of the general interests, and charged with the duty, not only of obtaining the required information, but of compelling, by all lawful methods, obedience to such rules."

The judgment is affirmed.

MATHEWS, Circuit Judge (concurring in the result).

The order here appealed from was not an order denying a motion to quash a subpoena requiring a witness to appear and produce documents before a grand jury (cf. Cobbledick v. United States, 309 U.S. 323, 60 S.Ct. 540, 84 L.Ed. 783), but was an order requiring appellant to appear and produce documents before appellee in response to a subpoena issued to appellant by appellee pursuant to § 19(b) of the Securities Act of 1933, 15 U.S.C.A. § 77s(b). The order was issued pursuant to § 22(b) of the Act, 15 U.S.C.A. § 77v(b), was a final decision, within the meaning of § 128(a) of the Judicial Code, 28 U.S.C.A. § 225(a), and hence was appealable. Cf. Ellis v. Interstate Commerce Commission, 237 U.S. 434, 35 S.Ct. 645, 59 L.Ed. 1036; Clarke v. Federal Trade Commission, 9 Cir., 128 F.2d 542.

Holding, as we do, that Ellis v. Interstate Commerce Commission, supra, is not overruled by Cobbledick v. United States, supra, we may and, I think, should disregard appellee's criticism of the Cobbledick decision. What my associates (Judges DENMAN and STEPHENS) say in their opinion * in answer to that criticism seems to me unnecessary and better left unsaid.

The order should be affirmed upon the authority of Woolley v. United States, 9 Cir., 97 F.2d 258; Consolidated Mines v. Security and Exchange Commission, 9 Cir., 97 F.2d 704; Atherton v. United States, 9 Cir., 128 F.2d 463.

---

* In the paragraph beginning with the words "We cannot" and ending with the words "ninety district courts."