PENFIELD COMPANY OF CALIFORNIA ET AL. *v.*
SECURITIES & EXCHANGE COMMISSION.

No. 453. Argued January 16, 1947.—Decided March 31, 1947.

586

*Morris Lavine* argued the cause and filed a brief for petitioners.

*Roger S. Foster* argued the cause for respondent. With him on the brief were *Acting Solicitor General Washington, Philip Elman, Robert S. Rubin* and *W. Victor Rodin.*

MR. JUSTICE DOUGLAS delivered the opinion of the Court.

The Securities and Exchange Commission, acting pursuant to its authority under § 20 (a) of the Securities Act of 1933, 48 Stat. 74, 86, 15 U. S. C. § 77t, issued orders directing an investigation to determine whether Penfield Company had violated the Act in the sale of stock or other securities. In the course of that investigation it directed a subpoena *duces tecum* to Young, as an officer of Penfield, requiring him to produce certain books of the corporation covering a four year period ending in April, 1943. See § 19 (b) of the Act. Upon Young's refusal to appear and produce the books and records, the Commission filed an application with the District Court for an order enforcing the subpoena.[1] After a hearing, the court ordered

---

[1] SEC. 22 (b) provides:

"In case of contumacy or refusal to obey a subpena issued to any person, any of the said United States courts, within the jurisdiction of which said person guilty of contumacy or refusal to obey is found or resides, upon application by the Commission may issue to such person an order requiring such person to appear

Young, as an officer of Penfield, to produce them.[2] Young persisted in his non-compliance. The Commission then applied to the District Court for a rule to show cause why Young should not be adjudged in contempt—a proceeding which, as we shall see, was one for civil contempt. The District Court delayed action on the motion until after disposition of a criminal case involving Young, Penfield, and others. When that case was concluded, the court, after hearing, adjudged Young to be in contempt. It refused, however, to grant any coercive relief designed to force Young to produce the documents but instead imposed on him a flat, unconditional fine of $50.00 which he paid.[3]

---

before the Commission, or one of its examiners designated by it, there to produce documentary evidence if so ordered, or there to give evidence touching the matter in question; and any failure to obey such order of the court may be punished by said court as a contempt thereof."

[2] That order was affirmed by the Circuit Court of Appeals. 143 F. 2d 746.

[3] The request of the Commission and the ruling of the court are made clear by the following colloquy:

"Mr. CUTHBERTSON: So far as the punishment which the Court might see fit to impose, that is up to the Court. We are still anxious to get a look at these books and records, so I suggest to the Court, if he be so disposed, whatever punishment the Court might see fit to impose would be in connection with or so long as he refused to produce his books and records for our inspection.

"THE COURT: I don't think that I am going to be disposed to do anything like that. I sat here for six weeks and listened to books and records. The Government produced people from all over the United States in connection with the Penfield matter.

"Mr. CUTHBERTSON: I might say, your Honor, that we have in mind that these books and records may disclose certain acts other than those charged in the indictment. We don't propose to go over the same matter that the Court went over in connection with the criminal case.

"THE COURT: The Court can take judicial notice of its own books and records, and in that trial the evidence was clear and

That was on July 2, 1945. On September 24, 1945, the Commission filed a notice of appeal in the District Court and subsequently a statement of points challenging as error the action of the District Court in imposing the $50.00 fine instead of ·a remedial penalty calculated to make Young produce the documents. The Circuit Court of Appeals reversed, holding that the District Court erred in imposing the fine and directing that Young be ordered imprisoned until he produced the documents. 157 F. 2d 65. The case is here on a petition for a writ of certiorari filed by Penfield Co. and Young. Neither the District Court nor the Circuit Court of Appeals rendered judgment against Penfield. Nor is any relief sought by or against it here. Accordingly the writ is dismissed as to Penfield.

*First.* It is argued that since no application for an allowance of an appeal was made, the Circuit Court of Appeals had no jurisdiction to entertain it.[4] If the appeal was in a suit of a civil nature, the filing of the notice of appeal with the District Court was adequate under the Rules of Civil Procedure.[5]

definite and positive from all of the Government's witnesses, that during one period of time this defendant had nothing whatsoever to do with the Penfield Company. Whether that period of time is covered by what the Securities and Exchange Commission seeks or not, I don't know.

"The judgment and sentence of the Court is that the defendant pay a fine of $50, and stand committed until paid."

[4] Section 8 (c) of the Act of February 13, 1925, 43 Stat. 936, 940, as amended, 28 U. S. C. § 230, provides: "No appeal intended to bring any judgment or decree before a circuit court of appeals for review shall be allowed unless application therefor be duly made within three months after the entry of such judgment or decree." See *Alaska Packers Assn.* v. *Pillsbury,* 301 U. S. 174; *Georgia Lumber Co.* v. *Compania,* 323 U. S. 334.

[5] Rule 73 (a) provides in part: "When an appeal is permitted by law from a district court to a circuit court of appeals and within the time prescribed, a party may appeal from a judgment by filing with

It is the nature of the relief asked that is determinative of the nature of the proceeding. *Lamb* v. *Cramer,* 285 U. S. 217, 220. This was not a proceeding in which the United States was a party and in which it was seeking to vindicate the public interest. See *Gompers* v. *Bucks Stove & Range Co.,* 221 U. S. 418, 445. The contempt proceedings were instituted as a part of the proceedings in which the Commission sought enforcement of a subpoena. The relief which the Commission sought was production of the documents; and the only sanction asked was a penalty designed to compel their production. Where a fine or imprisonment imposed on the contemnor is "intended to be remedial by coercing the defendant to do what he had refused to do," *Gompers* v. *Bucks Stove & Range Co., supra,* p. 442, the remedy is one for civil contempt. *United States* v. *United Mine Workers,* 330 U. S. pp. 258, 303. Then "the punishment is wholly remedial, serves only the purposes of the complainant, and is not intended as a deterrent to offenses against the public." *McCrone* v. *United States,* 307 U. S. 61, 64. One who is fined, unless by a day certain he produces the books, has it in his power to avoid any penalty. And those who are imprisoned until they obey the order, "carry the keys of their prison in their own pockets." *In re Nevitt,* 117 F. 448, 461. Fine and imprisonment are then employed not to vindicate the public interest but as coercive sanctions to compel the contemnor to do what the law made it his duty to do. See *Doyle* v. *London Guarantee Co.,* 204 U. S. 599; *Oriel* v. *Russell,* 278 U. S. 358; *Fox* v. *Capital Co.,* 299 U. S. 105; *McCrone* v. *United States, supra.*

The Act gives the Commission authority to require the production of books and records in the course of its investi-

---

the district court a notice of appeal." Where a Rule of Civil Procedure conflicts with a prior statute, the Rule prevails. 48 Stat. 1064, 28 U. S. C. § 723b.

gations. And in absence of a basis for saying that its demand exceeds lawful limits (*Oklahoma Press Publishing Co.* v. *Walling,* 327 U. S. 186), it is entitled to the aid of the court in obtaining them.[6] A refusal of the court to enforce its prior order for the production of the documents denies the Commission that statutory relief. The issue thus raised poses a problem in civil, not criminal, contempt.[7]

Where a judgment of contempt is embodied in a single order which contains an admixture of criminal and civil elements, the criminal aspect of the order fixes its character for purposes of procedure on review. *Union Tool Co.* v. *Wilson,* 259 U. S. 107. But there was no such admixture here. The District Court refused to grant any remedial relief to the Commission. The denial of that relief was the ground of the Commission's appeal. The order of denial being final, was appealable, *Lamb* v. *Cramer, supra,* pp. 220–221, and the right to appeal from it was in no way dependent on an appeal from the imposition of the fine.

*Second.* The question on the merits is two-fold: (1) whether the Circuit Court of Appeals erred in granting the Commission remedial relief by directing that Young be required to produce the documents; and (2) whether that court exceeded its authority in reversing the judgment which imposed the fine and in substituting a term of imprisonment conditioned on continuance of the contempt.

As we have already noted, the Act requires the production of documents demanded pursuant to lawful orders of the Commission and lends judicial aid to obtain them. There is no basis in the record before us for saying that

---

[6] See § 22 (b), *supra,* note 1.

[7] This thus disposes of the further contention that the appeal was not timely under the Criminal Appeals Act, 18 U. S. C. Supp. II § 682. *United States* v. *Hark,* 320 U. S. 531.

the demand of the Commission exceeded lawful limits. There is, however, a suggestion that the District Court was warranted in denying remedial relief since the contempt hearing came after a criminal trial of petitioners in another case, during the course of which many of Penfield's books and records were examined. The thought apparently is that the Commission had probed enough into Penfield's affairs. But the District Court did not hold that the Commission's request had become moot, that the documents produced satisfied its legitimate needs, or that the additional ones sought were irrelevant to its statutory functions.[8] We agree with the Circuit Court of Appeals that at least in absence of such a finding, the refusal of the District Court to grant the full remedial relief which the Act places behind the orders of the Commission was an abuse of discretion. The records might well disclose other offenses against the Securities Act of 1933 which the Commission administers. The history of this case reveals a long, persistent effort to defeat the investigation. The fact that Young paid the fine and did not appeal indicates that the judgment of contempt may have been an easy victory for him. On the other hand, the dilatory tactics employed suggest that if justice was to be done, coercive sanctions were necessary.

When the Circuit Court of Appeals substituted imprisonment for the fine, it put a civil remedy in the place of a criminal punishment. For the imprisonment authorized would be suffered only if the documents were not produced or would continue only so long as Young was recalcitrant. On the other hand, the fine imposed by the District Court, unlike that involved in *Fox* v. *Capital Co.*,

---

[8] As will be seen from note 3, *supra,* the court, immediately prior to rendering its sentence, noted that there was one period during which Young was not connected with Penfield Co. But the court added: "Whether that period of time is covered by what the Securities and Exchange Commission seeks or not, I don't know."

*supra,* pp. 106–107, was unconditional and not relief of a coercive nature such as the Commission sought. It was solely and exclusively punitive in character. Cf. *Nye* v. *United States,* 313 U. S. 33, 42–43.

As already noted, Young did not appeal from the order holding him in contempt and subjecting him to a fine. Young maintains, however, that once the fine was imposed and paid, the jurisdiction of the court was exhausted; that the Circuit Court of Appeals was without authority to substitute another penalty or to add to the one already imposed and satisfied. That argument rests on the statute granting federal courts the power to punish contempts of their authority, Judicial Code § 268, 28 U. S. C. § 385, and the decisions construing it. The statute gives the federal courts power "to punish, by fine or imprisonment, at the discretion of the court, contempts of their authority," including violations of their lawful orders. At least in a criminal contempt proceeding both fine and imprisonment may not be imposed since the statute provides alternative penalties. *In re Bradley,* 318 U. S. 50. Hence if a fine is imposed on a contemnor and he pays it, the sentence may not thereafter be amended so as to provide for imprisonment. The argument here is that after a fine for criminal contempt is paid, imprisonment may not be added to, or substituted for the fine, as a coercive sanction in a civil contempt proceeding. If that position is sound, then the statutory limitation of "fine or imprisonment" would preclude a court from imposing a fine as a punitive measure and imprisonment as a remedial measure, or *vice versa.*

The dual function of contempt has long been recognized—(1) vindication of the public interest by punishment of contemptuous conduct; (2) coercion to compel the contemnor to do what the law requires of him. *Gompers* v. *Bucks Stove & Range Co., supra,* pp. 441 *et seq.* *United States* v. *United Mine Workers, supra,* p. 302.

As stated in *Bessette* v. *W. B. Conkey Co.*, 194 U. S. 324, 327, "The purpose of contempt proceedings is to uphold the power of the court and also to secure to suitors therein the rights by it awarded."

We assume, *arguendo,* that the statute allowing fine or imprisonment governs civil as well as criminal contempt proceedings. If the statute is so construed, we find in it no barrier to the imposition of both a fine as a punitive exaction and imprisonment as a coercive sanction, or *vice versa.*[9] That practice has been approved. *Kreplik* v. *Couch Patents Co.*, 190 F. 565, 571. And see *Phillips S. & T. P. Co.* v. *Amalgamated Assn.*, 208 F. 335, 340. When the court imposes a fine as a penalty, it is punishing yesterday's contemptuous conduct. When it adds the coercive sanction of imprisonment, it is announcing the consequences of tomorrow's contumacious conduct. At least in that situation the offenses are not the same. And the most that the statute forbids is the imposition of both fine and imprisonment for the same offense.

Young raises objections that go to the merits of the judgment of contempt. These were considered and determined against him by the District Court. Since he did not appeal from that adverse judgment, he is precluded from renewing the objections at this stage. *Le Tulle* v. *Scofield,* 308 U. S. 415, 421–422; *Helvering* v. *Pfeiffer,* 302 U. S. 247, 250–251.

---

[9] Some rules governing criminal contempts are, of course, different from those governing civil contempts. *Gompers* v. *Bucks Stove & Range Co., supra,* pp. 444, 446–449. If those differences are satisfied and if, as in *In re Swan,* 150 U. S. 637; *Matter of Christensen Engineering Co.,* 194 U. S. 458; *In re Merchants' Stock Co.,* 223 U. S. 639; *Farmers Nat'l Bk.* v. *Wilkinson,* 266 U. S. 503, the criminal penalty and the remedial relief are segregated, no problem of the adequacy of the order for purposes of appellate review is presented. No question is raised here as to the propriety of combining civil and criminal contempt in the same proceeding.

There is a difference of view among us whether the portion of the order of the Circuit Court of Appeals which set aside the unconditional fine of $50 imposed on Young is here for review. But if we assume that it is, a majority of the Court is of the opinion that the Circuit Court of Appeals was correct in setting it aside, since the fine was imposed in a civil contempt proceeding. See *Gompers* v. *Bucks Stove & Range Co., supra.*

*Affirmed.*

Mr. Justice Rutledge, concurring.

But for the decision in *United States* v. *United Mine Workers,* 330 U. S. 258, I should have no difficulty in concluding with the Court that this contempt proceeding was exclusively civil in character and that, consequently, no criminal penalty could be imposed, coercive relief alone being allowable in such a case. *Gompers* v. *Bucks Stove & Range Co.,* 221 U. S. 418.[1] That decision held that the imposition of criminal punishment in a civil contempt proceeding "was as fundamentally erroneous as if in an action of 'A. *vs.* B. for assault and battery,' the judgment entered had been that the defendant be confined in prison for twelve months." 221 U. S. at 449.

By every test applied in the *Gompers* case this proceeding was civil, not criminal in character. Here as there the proceeding was entitled, instituted and conducted as collateral to civil litigation. It sought only remedial relief, namely, the production of specified books and records.[2]

---

[1] See *In re Fox,* 96 F. 2d 23; *Norstrom* v. *Wahl,* 41 F. 2d 910.

[2] The application in contempt was made by affidavit setting forth the facts alleged to constitute the violation. The contempt proceeding was entered upon the civil docket, being cause "No. 2863, Civil, *Securities and Exchange Commission* v. *Penfield Company of California.*" Young was first commanded to appear and show cause why a further order should not be made directing him "to show cause why

And issuance of the citation was grounded upon disobedience of the court's lawful order for their production.[3]

This act, like the act of disobedience in the *Gompers* case, constituted conduct which would have sustained either civil or criminal penalty in appropriate proceedings. But the unequivocal ruling of that case was that criminal penalties cannot be applied in civil contempt proceedings. 221 U. S. at 444, 449, 451–452. Not only the result, but the whole tenor of the opinion was to the effect that the character of the proceeding as a whole, whether as civil or criminal, must be correlated with the character of the penalty imposed, and that the two cannot be scrambled, regardless of the fact that the conduct constituting the contempt would support the imposition of either type of relief in a proceeding appropriate to the kind of relief given.[4] Not simply the remedy sought but the character of the proceeding in which it is pursued, it was held, determines the validity of the relief afforded.[5]

---

an order should not be made holding said A. W. Young in contempt of this Court and to be dealt with accordingly." The order of citation followed in the same terms. At the hearing counsel for the Commission maintained consistently and urgently that the proceeding was exclusively civil, not criminal in character. Not until pronouncement of judgment was any step taken indicating the proceeding to be criminal in nature.

[3] The validity of the order for production was sustained on appeal. 143 F. 2d 746.

[4] See the Court's discussion in *Gompers* v. *Bucks Stove & Range Co.*, 221 U. S. 418, particularly at pp. 444–449, 451 ff.; see also discussion in *United States* v. *United Mine Workers*, 330 U. S. 258, dissenting opinion, p. 363, Part III.

[5] The *Gompers* opinion, as I understand it, does not hold that the character of the relief sought is exclusively the criterion of the character of the proceeding. It was said to be a factor to be taken into account. But, in view of the Court's stress upon other factors, including the private or public character of the complainant, whether or not the contempt proceeding arises in and as corollary to civil litigation, and

This ruling, as I have previously maintained, was one not only of historical grounding but of constitutional compulsion.[6] Moreover, it recently has been reinforced by Rule 42 (b) of the Federal Rules of Criminal Procedure, requiring that the notice prescribed for instituting the proceeding "shall state the essential facts constituting the *criminal* contempt charged and *describe it as such.*"[7] (Emphasis added.)

Hence, under the rule of the *Gompers* case and others following it, it is clear that the district judge had no power in this case to impose the criminal penalty of a flat $50 fine and it is equally clear, on the record,[8] that he ex-

---

the necessity for observing distinct procedural requirements in the course of trial, the case seems clearly to rule that the character of the proceeding determines the nature of the relief which can be given rather than the reverse.

[6] See the references cited in note 4 *supra;* and see note 5.

[7] "A criminal contempt except as provided in subdivision (a) of this rule shall be prosecuted on notice. The notice shall state the time and place of hearing, allowing a reasonable time for the preparation of the defense, and shall state the essential facts constituting the criminal contempt charged and describe it as such. The notice shall be given orally by the judge in open court in the presence of the defendant or, on application of the United States attorney or of an attorney appointed by the court for that purpose, by an order to show cause or an order of arrest. . . ." Rule 42 (b), Federal Rules of Criminal Procedure. See *United States* v. *United Mine Workers,* 330 U. S. 258, dissenting opinion, p. 372, and note 45.

The rule did not become effective until March 21, 1946, hence was not applicable to the present proceeding which was instituted and concluded in the trial court prior to that date.

[8] See text *infra.* The record does not show that the function of the subpoena had been exhausted at the time of the judgment in contempt, although this was Young's contention accepted, apparently, by the District Court. The contrary, in fact, affirmatively appears. The subpoena did not purport to be issued exclusively in connection with and for the purposes of the criminal trial which transpired in the District Court between its issuance and the time of the judgment in con-

ceeded his power in denying the Commission civil coercive relief altogether.[9]

Moreover, I think it is clear that both of these problems are presented for our determination on the state of the record here.   It is true that Young did not appeal from the District Court's judgment to the Circuit Court of Appeals, and that he paid the fine.   But the Commission appealed from that judgment in its entirety, as it had a right to do,[10] unless the payment of the fine exhausted all judicial power to deal further with the proceeding.   This indeed is a basis upon which Young maintains that the Circuit Court of Appeals had no power to reverse the District Court's judgment.[11]

---

tempt.   Counsel for the Commission expressly stated that the subpoena was not limited to that matter and the court said, after referring to the period of the criminal suit: "Whether that period of time is covered by what the Securities and Exchange Commission seeks or not, I don't know."

The court made no finding that the subpoena's function had been exhausted.   The only reason assigned for refusing civil relief was that the court had sat in the criminal trial for six weeks during which it had "listened to books and records," as well as witnesses produced "from all over the United States in connection with the Penfield matter." Taking judicial notice of its own proceedings, the court said: ". . . in that trial the evidence was clear and definite . . . that during one period of time this defendant [Young] had nothing whatsoever to do with the Penfield Company."   These grounds, of course, were not the equivalent of finding that the records covered by the subpoena had been produced or that the Commission had no power or valid reason for pursuing its statutory investigation through the subpoena beyond the confines of the closed criminal trial.

[9] See note 8.   And see text *infra* preceding note 20.

[10] 28 U. S. C. § 225; see *Clarke* v. *Federal Trade Commission,* 128 F. 2d 542; *Lamb* v. *Cramer,* 285 U. S. 217, 220.

[11] The principal contention in this respect is based on § 268 of the Judicial Code, 28 U. S. C. § 385, and the decision in *In re Bradley,* 318 U. S. 50.   The *Bradley* case, however, was one in criminal contempt and the decision was that in such a case § 268 forbids imposition as penalty of both fine and imprisonment.   The penalties being al-

But clearly, as the Court holds, such power could not be wanting, if the litigation was exclusively civil in character. On the contrary the action of the Circuit Court of Appeals was exactly in accordance with the ruling in the *Gompers* case and was required by it. In both cases the proceedings were wholly civil in character. In both a criminal penalty was imposed. And in both the judgment laying it was reversed and the cause was remanded to the trial court for further proceedings looking only to the giving of civil relief.

The only difference is that in the *Gompers* case the contemnors had not entered upon the service of the void criminal sentence of imprisonment but appealed from it, while here Young paid the fine and did not appeal. That action on his part, however, cannot oust the Commission of its statutory right of appeal and review or of its right to civil relief.[12] If the contempt proceeding were criminal in character, a different question might be presented.[13] But compliance with a void criminal penalty, void because imposed in a wholly civil proceeding, cannot

---

ternative by the section's terms, it was held that payment of the fine exhausted the court's power.

The *Bradley* case therefore presented no question of the applicability of § 268 in civil contempt proceedings or of its effect if applicable. Compare the majority and concurring opinions in *In re Sixth & Wisconsin Tower, Inc.*, 108 F. 2d 538. It cannot be taken as having ruled that the court's invalid imposition of criminal punishment in civil contempt proceedings or satisfaction of such a void sentence exhausts either the trial court's power or that of an appellate court on review to deal with the civil contempt by affording civil relief or to avoid the invalid criminal judgment.

Whether or not § 268, if applicable to a so-called mixed civil-criminal contempt proceeding, would forbid the imposition of relief both by way of fine and imprisonment, one punitive, the other coercive and remedial, need not be considered in view of the holding that this proceeding was exclusively civil in character.

[12] See notes 10, 14.

[13] See note 11 *supra.*

make it valid or oust either the courts of their civil juris-
diction in matters of relief or opposing parties of their
rights in that respect.

In short, the Commission was forced to appeal from the
judgment rendered, if it was not to acquiesce in what the
court had done and thereby suffer unauthorized thwarting
of its statutory investigating power.   That judgment was
rightfully taken in its entirety to the Circuit Court of Ap-
peals, was reviewed by that court, and was reversed not
partially but completely.[14]   Our action in granting cer-
tiorari brought here for review the entire judgment of the
Circuit Court of Appeals, including its reversal of the
criminal judgment rendered by the District Court as well

---

[14] The opinion of the Circuit Court of Appeals states: "Young did
not appeal from the order holding him in contempt.   That decision is
final and the only question before us is the extent of the remedy to
which the Commission is entitled."   157 F. 2d 65, 66.   Ruling that
the cause did not become moot by reason of Young's payment of the
fine, the court further held the District Court had abused its "dis-
cretion" in not granting the full relief sought by the Commission.
The concluding paragraph of the opinion stated: "The order im-
posing the fine is reversed and the case remanded to the district court
for an order requiring Young's imprisonment to compel his obedience
to the order to produce the documents in question."   The opinion con-
cluded: "The order of the district court is reversed," 157 F. 2d at 67,
and the formal order for judgment entitled "decree" directed "that
the order of the said District Court in this cause be, and hereby is,
reversed, and that this cause be, and hereby is remanded to the said
District Court for further proceedings in accordance with the opinion
of this Court."

The notice of appeal filed in the District Court is not set forth in the
printed record here.   But the "Statement of Points on Which the
Appellant Intends to Rely," filed in the Court of Appeals, specifies
that "the District Court erred in ordering Young to pay a fine of
$50.00 instead of imposing a remedial penalty calculated to coerce
Young to produce or allow inspection of the books and records . . . ."

In this state of the record it cannot be taken that the appeal and
the judgment of the Court of Appeals did not comprehend the criminal
penalty.

as its mandate for civil relief.[15]   Hence in my opinion we are forced to take action upon the judgment as a whole, in both civil and criminal phases.

Since I am in agreement with the Court's view that the *Gompers* ruling and others in accord with it are controlling in this case, I think the judgment of the Circuit Court of Appeals should be affirmed, though with modification in one respect.[16]   I find it difficult, however, to reconcile the action taken here with what was done in the *Mine Workers* decision.   A majority there held, as I thought contrary to the *Gompers* ruling, that civil and criminal contempt could be prosecuted in a single contempt proceeding conducted according to the rules of procedure applicable in equity causes,[17] and that both types of relief, civil and criminal, could be imposed in such a mixed proceeding.   It was also held that on review the appellate court is free to substitute its own judgment concerning the nature and extent of both types of relief for that of the trial court, and therefore that in remanding the cause for further proceedings there was no necessity to leave room for the further exercise of the trial court's discretion in relation to either type of relief.

If in that case a single mixed proceeding could suffice without regard to the requirements of Rule 42 (b) and the

---

[15] This Court's action in granting certiorari, 329 U. S. 706, was not limited to any question or phase of the Court of Appeals' action, but brought up the judgment in its entirety.   Since that court's judgment comprehended the reversal of the criminal penalty imposed by the District Court, that phase of the Court of Appeals' judgment is necessarily here for review and determination.

[16] See text at note 20.

[17] See *United States* v. *United Mine Workers,* 330 U. S. 258, dissenting opinion, p. 363, Part III.   The rule to show cause issued in that case provided: "IT IS FURTHER ORDERED, that the accused, and each of them, *shall, unless waived by them, be tried* upon said charges of contempt by the court *with an advisory jury* to be empanelled by this court."   (Emphasis added.)   The advisory jury was waived.

*Gompers* line of decisions concerning procedures to be followed in instituting and conducting contempt proceedings, for the imposition of both civil and criminal penalties, I see no valid reason why the same thing could not be done in this cause or why both the criminal fine imposed by the District Court and the civil relief given by the Circuit Court of Appeals should not be allowed to stand.

It is true that if the proceeding is to be taken as having been both civil and criminal a serious question would be presented on the terms of § 268 of the Judicial Code whether imposition and payment of the fine here did not exhaust judicial power to deal further with the proceeding, more especially in its criminal phase.[18]  But that question too, I take it, necessarily would be settled if the *Mine Workers* ruling were to govern here.

It is also true that in this case the United States was not a party by that name, as it was in the *Mine Workers* case, to the civil litigation in which the contempt proceeding arose or to the contempt proceeding itself.  But the Commission was the moving party in both, representative as such of the public interest as the trial court pointed out.[19] And, in view of the vast liberality allowed by the *Mine Workers* decision concerning matters of procedure and relief in contempt proceedings, it hardly can be a solid ground for distinguishing the cases that in one the public interest was represented, as to the criminal phase, *eo nomine* United States, in the other under the name of the Securities and Exchange Commission.   Cf. *In re Bradley,*

---

[18] See note 11 *supra* and text.

[19] The court inquired of Commission counsel, in response to argument that the proceeding was exclusively civil, since it arose in the course of civil litigation and sought only remedial relief for one of the parties, and not as an independent proceeding in the public interest to vindicate the court's power: "The Securities and Exchange Commission does not operate for itself, does it?   I mean it operates in the public interest, doesn't it?"

318 U. S. 50. Indeed the record shows that in the present case the United States Attorney and the Assistant United States Attorney participated in the contempt proceeding in the District Court.

Notwithstanding these difficulties, since the Court rests the decision in this cause upon the *Gompers* rule, which in my opinion represents the settled law, I join in the affirmance of the judgment of the Circuit Court of Appeals, both insofar as it reversed the District Court's judgment because of the denial of coercive relief and in relation to its reversal of the criminal penalty imposed by the District Court.

But, while there can be no question of the Court of Appeals' power in proper cases to review and revise civil relief given in the District Court, in this case no such relief had been awarded. In my opinion the question of the character and scope of that relief was a matter, in the first instance, for the District Court's judgment rather than for the Court of Appeals. Accordingly, I would modify the judgment of reversal in the civil phase so that the cause would be remanded to the District Court with directions to exercise its discretion in framing the relief adequate and appropriate to make effective the Commission's right to disclosure.[20]

MR. JUSTICE FRANKFURTER, with whom concurs MR. JUSTICE JACKSON, dissenting.

Beginning with the Interstate Commerce Act in 1887, it became a conventional feature of Congressional regulatory legislation to give administrative agencies authority to issue subpoenas for relevant information. Congress has never attempted, however, to confer upon an administrative agency itself the power to compel obedience to such a subpoena. It is beside the point to consider

---

[20] *E. Ingraham Co.* v. *Germanow,* 4 F. 2d 1002, 1003.

whether Congress was deterred by constitutional difficulties. That Congress should so consistently have withheld powers of testimonial compulsion from administrative agencies discloses a policy that speaks with impressive significance.

Instead of authorizing agencies to enforce their subpoenas, Congress has required them to resort to the courts for enforcement. In the discharge of that duty courts act as courts and not as administrative adjuncts. The power of Congress to impose on courts the duty of enforcing obedience to an administrative subpoena was sustained precisely because courts were not to be automata carrying out the wishes of the administrative. They were discharging judicial power with all the implications of the judicial function in our constitutional scheme. *Interstate Commerce Commission* v. *Brimson,* 154 U. S. 447; 155 U. S. 3. Accordingly, an order directing obedience to a subpoena by the Securities and Exchange Commission, like a subpoena of any other federal agency, does not issue as a matter of course. An administrative subpoena may be contested on the ground that it exceeds the bounds set by the Fourth Amendment against unreasonable search and seizure; that the inquiry is outside the scope of the authority delegated to the agency; that the testimony sought to be elicited is irrelevant to the subject matter of the inquiry; that the person to whom it is directed cannot be held responsible for the production of the papers. See *Interstate Commerce Commission* v. *Brimson, supra,* at 479 and 489; *Harriman* v. *Interstate Commerce Commission,* 211 U. S. 407; *Ellis* v. *Interstate Commerce Commission,* 237 U. S. 434; *Smith* v. *Interstate Commerce Commission,* 245 U. S. 33; *Federal Trade Commission* v. *American Tobacco Co.,* 264 U. S. 298; *Oklahoma Press Publishing Co.* v. *Walling,* 327 U. S. 186. And see Lilienthal, *The Power to Compel Testimony,* 39 Harv. L. Rev. 694.

In this case, the Securities and Exchange Commission issued a subpoena to Young, as officer of the Penfield Company, for the production of books and records of the company covering the period May 1, 1939, to April 9, 1943. Upon Young's failure to comply, the Commission applied to the District Court, on April 13, 1943, for an order compelling obedience. From this order an appeal was taken to the Circuit Court of Appeals which affirmed the order on June 30, 1944, 143 F. 2d 746, its mandate being spread on the record of the District Court on December 7, 1944. Young having persisted in his refusal to comply, the Securities and Exchange Commission, on January 24, 1945, applied for a rule to show cause why he should not be cited for contempt. The District Court postponed final hearings on the order to show cause, pending, apparently, the completion of a criminal trial of Young and the Penfield Company then before the Court, on an indictment growing out of the inquiry for which the subpoena had been issued. It was not until July 2, 1945, after the petitioners had been acquitted in the criminal proceeding, that the rule to show cause was heard.

The District Court found petitioner Young guilty of contempt of court for disobedience of its order of June 1, 1943, requiring the production of records called for by the subpoena issued by the S. E. C. But the Court refused the Government's request to impose a contingent punishment to secure production of the records. Instead, it sentenced Young to the payment of a fine of $50. Without objection Young paid this fine, and consistently thereafter maintained that by such payment judicial power had exhausted itself. See *In re Bradley,* 318 U. S. 50. The Government appealed from this disposition by the District Court on the ground that the District Court, having adjudged Young to be in contempt, erred in ordering Young to pay a fine of $50 and stand committed until the fine was paid, instead of imposing

a remedial penalty, calculated to coerce Young to produce or allow inspection of the books and records of the Penfield Co., pursuant to the order of June 1, 1943. On the basis of this appeal, which challenged what the District Court did and what it refused to do, the Circuit Court of Appeals, one judge dissenting, reversed the order of the lower court: "The order imposing the fine is reversed and the case remanded to the district court for an order requiring Young's imprisonment to compel his obedience to the order to produce the documents in question." 157 F. 2d 65, 67. This Court then granted certiorari, the petition for which asked this Court to "reverse the judgment and order of the Circuit Court of Appeals in this case." There was thus properly before the Circuit Court of Appeals the judgment imposing the fine of $50 and refusing to give coercive remedy, and there is accordingly before us the correctness of the judgment of the Circuit Court of Appeals setting aside the $50 fine and ordering a coercive decree.

The judgment immediately before us is that of the Circuit Court of Appeals setting aside the fine imposed by the District Court and reversing its refusal to issue a coercive order. The ultimate question is the correctness of what the District Court did and what it refused to do. It is essential therefore to focus attention on the precise circumstances in which the District Court acted as it did. This is what the record tells us:

"Mr. Cuthbertson: So far as the punishment which the Court might see fit to impose, that is up to the Court. We are still anxious to get a look at these books and records, so I suggest to the Court, if he be so disposed, whatever punishment the Court might see fit to impose would be in connection with or so long as he refused to produce his books and records for our inspection.

"The Court: I don't think that I am going to be disposed to do anything like that. I sat here for six weeks and listened to books and records. The Government produced people from all over the United States in connection with the Penfield matter.

"Mr. Cuthbertson: I might say, your Honor, that we have in mind that these books and records may disclose certain acts other than those charged in the indictment. We don't propose to go over the same matter that the Court went over in connection with the criminal case.

"The Court: The Court can take judicial notice of its own books and records, and in that trial the evidence was clear and definite and positive from all of the Government's witnesses, that during one period of time this defendant had nothing whatsoever to do with the Penfield Company. Whether that period of time is covered by what the Securities and Exchange Commission seeks or not, I don't know.

"The judgment and sentence of the Court is that the defendant pay a fine of $50, and stand committed until paid."

Bearing in mind that the District Court was not an automaton which must unquestioningly compel obedience to a subpoena simply because the Commission had issued it, we must consider whether the District Court had abused the fair limits of judicial discretion. If a district court believes that howsoever relevant a demand for documents may have been at the time it was made, circumstances had rendered the subpoena obsolete, it is entitled to consider the merits of the subpoena as of the time that its enforcement is sought and not as of the time that it was issued. The above colloquy means nothing unless it means that Judge Hall was of the view that events had apparently rendered needless the call from Young for the

documents. He may have been wrong in that belief. At all events it was the view of a judge who had presided for six weeks over a trial in which these matters were canvassed. The Circuit Court of Appeals did not have before it, nor have we, the knowledge or the basis for knowledge that Judge Hall had, and so neither court can say with any confidence that he did not have ground for thinking that the change in circumstances revealed in the course of the trial obviated the need for the demand that was made upon Young. We surely ought not to reverse the action of the district judge on the abstract assumption that papers ordered to be produced as relevant to an inquiry at the time the subpoena issued continued relevant several months later. We ought not to assume that a subpoena was proper months later when a proceeding lasting more than six weeks before the judge who had approved the subpoena in the first instance persuaded him that the circumstances no longer called for carrying out the terms of the subpoena. When the trial judge stated his understanding that the intervening circumstances had rendered inappropriate the use of his coercive powers, counsel for the Government did not gainsay the judge's view. The failure of Government counsel to contradict the interpretation of facts by the Court does not present any technical ground of not allowing a point to be raised on appeal to which no exception was taken. The significance of counsel's silence is its confirmation of the judge's interpretation of the circumstances. At least in the absence of contradiction, the interpretation of the facts by the trial judge was a proper basis for the exercise of his judicial discretion.

On the record before us, Judge Hall exercised allowable discretion in finding that the subpoena had spent its force, and in concluding not to compel obedience to it. At the same time, he was justified in finding that because Young had disobeyed the subpoena while it was still alive, he

should be fined and made to feel that one cannot flout a court's authority with impunity.

The question, then, is whether the Court could impose what constituted a fine for criminal contempt, that is, to vindicate the law as such, without a formal pleading charging Young with such disobedience. We do not think Judge Hall had to direct the clerk to issue an attachment against Young to inform him of that which he obviously knew and which the proceedings had made abundantly clear to him. The true significance of our opinion in *United States* v. *United Mine Workers,* 330 U. S. 258, as we understand it, is that contempt proceedings are *sui generis* and should be treated as such in their practical incidence. They are not to be circumscribed by procedural formalities, or by traditional limitations of what are ordinarily called crimes, except insofar as due process of law and the other standards of decency and fairness in the administration of federal justice may require. On this record we find not the faintest denial of any safeguard or of appropriate procedural protection.

We think the judgment of the Circuit Court of Appeals should be reversed and that of the District Court reinstated.