CRESCENCIO ESPINOSA, Petitioner and Appellant, *v.* CASTO RAMÍREZ, WARDEN OF THE DISTRICT JAIL OF HUMACAO, Defendant and Appellee.

No. 10099.   Argued January 9, 1950.—Decided March 17, 1950.

*Santos P. Amadeo, Cruz Ortiz Estella, J. Hernández Vallé,* and
*Agustín Pérez Rodríguez,* for appellant. *Vicente Géigel Po-
lanco, Attorney General,* and *J. Rivera Barreras, Fiscal of
the Supreme Court,* for appellee.

MR. CHIEF JUSTICE DE JESÚS delivered the opinion of the
Court.

In an action for support the District Court of Humacao
rendered judgment ordering Crescencio Espinosa to pay to
his alleged natural daughter, Ruth Pérez, a weekly allow-
ance of $5.00. The defendant refused to comply with the
judgment and at the request of the plaintiff, mother of the
minor, he was summoned to show cause why he should not
be punished for contempt. After plaintiff introduced her
evidence, the defendant stated that he would introduce none
and that he had not deposited nor intended to deposit the
weekly allowances past due; in brief, that he did not intend
to comply with the judgment. In view of this, the court
found him guilty of civil contempt and sentenced him to
imprisonment in the district jail of Humacao for an indefinite
term until he complied with the judgment in the action for
support. Upon being committed to jail by virtue of the
contempt judgment, the defendant appealed to the Acting
Judge in Vacation of this Court, with a petition for habeas
corpus alleging that his imprisonment was illegal because the
trial court lacked jurisdiction to render the judgment ap-
pealed from. He based his theory on the following grounds:

(*a*) That Act No. 102 of 1937 regulating the power of
the courts of Puerto Rico to punish for contempt is applicable

to criminal as well as to civil contempt, and that in fixing the penalties that may be imposed, it does not provide for an indefinite imprisonment.

(b) Since such sentence is not authorized as it is in California under § 1219 of the Code of Civil Procedure, it infringes § 2 of the Organic Act of Puerto Rico which provides that no person shall be deprived of his liberty without due process of law.

(c) That since the district courts of Puerto Rico are not constitutional courts, they may only exercise the authority conferred on them by the Legislature of Puerto Rico.

Relying on the cases of *Munet v. Ramos,* 69 P.R.R. 328, *Dubón v. Casanova,* 65 P.R.R. 786 and *Germán v. District Court,* 63 P.R.R. 587, the Acting Judge in Vacation, without hearing the parties, denied the petition for habeas corpus. The petitioner appealed from this order to the full Court. The *Fiscal* of this Court sought the dismissal of the appeal on the ground that an order of an Acting Judge in Vacation denying the issuance of a writ of habeas corpus without hearing the parties, is not reviewable. The motion to dismiss as well as the appeal on its merits, were jointly submitted.

## I.

██ In support of his motion to dismiss, the appellee contends that pursuant to § 9 of "an Act fixing the terms of the Supreme Court of Porto Rico" approved on March 1, 1902, as amended by Act No. 59 of April 27, 1931, the orders of the Acting Judge in Vacation rendered in writs of prohibition, certiorari, mandamus, quo warranto and habeas corpus, shall be reviewable by this Court; that in the present case the Acting Judge in Vacation summarily denied the petition for habeas corpus and since in *Camacho v. District Court,* 69 P.R.R. 689, it was held that only if the Acting Judge in Vacation entertains the petition, issues the writ and makes final disposition of the matter, is his judgment appealable to the Court in full, the dismissal of the appeal herein lies.

The doctrine established in the *Camacho* case, *supra*, rests on the fact that the Legislature, upon making the orders of the Acting Judge in Vacation reviewable, had in mind the same remedy granted by subdivision 1 of § 295 of the Code of Civil Procedure for the review of judgments of the district courts, and since pursuant to subdivision 1 only final judgments rendered in a suit or a special proceeding are appealable, a decision of an Acting Judge in Vacation which does not make final disposition of the matter is not appealable.

On the other hand, appellant maintains that in the *Camacho* case, *supra*, the decision of the Acting Judge in Vacation was issued in a certiorari proceeding, while in the instant case the petition was denied in a habeas corpus proceeding; that in a certiorari no suit is instituted, as the proceeding is incidental to an action already established and the denial to entertain and issue the writ is not a final judgment; that as held in *Ex parte Quirin*, 317 U.S. 1 (1942) 87 L. ed. 3, the presentation of a petition for habeas corpus is the institution of a suit and consequently denial by the court of leave to file the petition is a judicial determination of a case reviewable by appeal to the United States Court of Appeals and in the Supreme Court by certiorari.

We might agree with appellant if § 295 of the Code of Civil Procedure governed appeals in habeas corpus proceedings. But the latter are governed by the Act of March 12, 1903, Code of Criminal Procedure, 1935 ed., page 329, § 1; which provides:

"An appeal may be taken to the Supreme Court of Puerto Rico from the final order of a court or judge *upon the return of the writ of habeas corpus*, by any party to the proceedings, aggrieved thereby." (Italics ours.)

According to the above-quoted Section, for a decision to be reviewable it is a requirement *sine qua non* that the writ be issued and returned. In the present case since the writ was not issued, naturally, it was not returned. Consequently, the decision of the Acting Judge in Vacation is not appealable.

14

■ But since in this case the parties were heard by this Court and there is no controversy of facts, it would be futile to make the petitioner file the same petition with this Court, since by considering the petition addressed to the Acting Judge in Vacation as if addressed to the full Court we could dispose of the questions involved without need of issuing the writ or hearing the parties again. Therefore, we shall consider the petition as if it had been originally presented to the full Court. Cf. *Núñez* v. *Benítez, Chancellor*, 65 P.R.R. 812 and *Portela* v. *District Court*, 66 P.R.R. 268.

## II

■■ The question involved in the instant case, whether the district court may, in a civil contempt, order the contemnor to be committed to jail until he complies with the order or judgment which he refused to obey, was amply discussed and decided by this Court in *Dubón* v. *Casanova, supra.* Summarizing the discussion it was stated therein:

"We are of the opinion that in a civil contempt case like the one at bar, wherein the contempt consists in the obstinate and contumacious refusal on the part of the respondents to obey the order which had been lawfully issued by the lower court for the delivery to the marshal of the certificate of stock owned by the defendant, the district court acted with full power and within the limits of its jurisdiction in rendering the judgment appealed from. The incarceration of the respondents is not a punishment imposed upon them for their disobedience to the order of the court but a coercive remedy to compel them to do that which the court has commanded them to do. The respondents will carry with them into jail the keys which may set them free. They can recover *ipso facto* their freedom by surrendering the certificate in obedience to the order of the court." (page 798.)

' The discussion in that case was so elaborate with respect to civil contempt and the power of our district courts to impose imprisonment for an indefinite term as a coercive means to compel the contemnor to do what he refused to do, thus affording an adequate relief to the aggrieved party for the

disobedience of the judgment, that in passing on the questions now raised by the petitioner we could do nothing more than repeat what was stated therein. However, the petitioner, in assailing our decision in the *Dubón* case, *supra*, sets forth an argument which was not adduced therein. He maintains that when in 1902 the Legislature enacted the Contempt Act it established a single penalty for the two types of contempt and that it followed the same practice in the Acts amended on that matter in 1906 and 1937; that § 1219 of the California Code of Civil Procedure provided the penalty of imprisonment for an indefinite term for civil contempt, but that this Section was not adopted in Puerto Rico; thence it draws the conclusion that since the Legislature in Puerto Rico was only acquainted with Spanish legislation on contempt which has no special sanction for civil contempt, it was the legislative intent to impose the same penalty for both types of contempt thereby proscribing the imprisonment for an indefinite term imposed by the American courts in civil contempts.

In approving the Code of Criminal Procedure in 1902 and two years later the Code of Civil Procedure—both of American source—the courts in Puerto Rico assumed the characteristics of the American courts which served as their pattern. Among these characteristics is the power of every court to enforce its judgments, orders, and decrees by adequate coercive means. Without that power they would not be courts of justice but mere advisory or arbitration boards, powerless to enforce their awards or decisions. Thus we have that under § 28 of the Code of Civil Procedure, identical with § 177 of the California Code, a judge has the incidental power to command obedience to his lawful orders. So that the creation of a court presupposes as inherent thereto the power to command obedience to its orders or judgments. For this reason § 29 of the same Code, equivalent to § 178 of the California Code, prescribes:

"For the *effectual* exercise of the powers conferred by the last section, a judicial officer may punish for contempt in the cases provided in this Code." (Italics ours.)

And which are "the cases provided in this Code" to which § 29 refers? Obviously, those enumerated in §§ 7 and 28 [1] which contain, among others, the power of the court to enforce its judgments.

Relying on the failure to adopt § 1219 of the Code of Civil Procedure of California, the petitioner reaches the conclusion that it was the legislative intent to impose a single penalty for contempt, whether criminal or civil, and according to him this penalty is now found in the Act of March 1, 1902

---

[1] Sections 7 and 28 of the Code of Civil Procedure prescribe:

"Section 7.—Every court has power:

"1. To preserve and enforce order in its immediate presence.

"2. To enforce order in the proceedings before it, or before a person or persons empowered to conduct a judicial investigation under its authority.

"3. To provide for the orderly conduct of proceedings before it or its officers.

"4. To compel obedience to its judgments, orders and processes, and to the orders of a judge out of court, in an action or proceeding pending therein.

"5. To control, in furtherance of justice, the conduct of its ministerial officers, and of all other persons in any manner connected with a judicial proceeding before it, in every matter appertaining thereto.

"6. To compel the attendance of persons to testify in an action or proceeding pending therein, in the cases and manner provided in this Code.

"7. To administer oaths in an action or proceeding pending therein, and in all other cases where it may be necessary in the exercise of its powers and duties.

"8. To amend and control its process and orders so as to make them conformable to law and justice."

"Section 28.—Every judicial officer has power:

"1. To preserve and enforce order in his immediate presence, and in the proceedings before him, when he is engaged in the performance of an official duty.

"2. To command obedience to his lawful orders, as provided in this Code.

"3. To compel the attendance of persons to testify in a proceeding before him, in the cases and manner provided in this Code.

"4. To administer oaths to persons in a proceeding pending before him, and in all other cases where it might be necessary in the exercise of his powers and duties."

"Defining the Offense of Contempt of Court and Providing for the Punishment Thereof", § 2 of which, as amended by Act No. 102 of 1937 (page 242), insofar as pertinent provides:

"The Supreme Court and the district courts of Puerto Rico shall have *authority* to punish a contempt against their authority by imprisonment not exceeding the period of thirty (30) days in the local jail nearest to such court, or by a fine not exceeding two hundred (200) dollars, or by both such fine and imprisonment, in the discretion of such court." (Italics ours.)

An examination of the pertinent portion of § 2 will convince us that it is not true that Act No. 102 of 1937, has the purpose of providing the same punishment for both criminal and civil contempts. The contempt to which the Act refers is the contempt to the *authority* of the court. As stated in *Gompers* v. *Buck Stove & Range Co.*, 221 U.S. 418 (1911): "But if it is for criminal contempt the sentence is punitive, to vindicate the authority of the court." Thus in *Dubón* v. *Casanova, supra,* citing the case of *Germán* v. *District Court, supra,* we said on page 796: " 'We do note, however, that Act No. 102, Laws of Puerto Rico, 1937, leaves no room for speculation on the question before us, as to cases brought under that Act, in view of its specific provision that such cases involve *criminal contempt.* . .' ". And does the failure of the Legislature to adopt § 1219 of the California Code of Civil Procedure or provide for any other penalty for civil contempt, mean that our courts lack the power to impose an adequate penalty for that kind of contempt? As we have seen, the power to enforce their judgment or orders is inherent to the courts of justice. See *Ex parte Látimer*, 47 Cal. 131 (1873).

██ In the action for support that gave rise to the contempt judgment, a sentence imposing a fine or imprisonment for a definite term would not have permitted the court to exercise effectively its power to enforce its judgment for support, for the contemnor could very well pay the fine or

serve the sentence of imprisonment, and yet the minor, in whose favor judgment was rendered, would remain without receiving support. For this reason, when a defendant refuses to do an affirmative act required by a mandatory order for the benefit of another, the punishment should be remedial, designed to compel him to do what he refused to do. In *Penfield Co.* v. *S.E.C.*, 330 U.S. 585 (1947), The Securities Exchange Commission, in the course of an investigation directed a subpoena *duces tecum* to Young, as an officer of Penfield Co., requiring him to produce certain books of the corporation. Upon Young's refusal to appear and *produce* the books, the Commission filed an application with the U. S. District Court for the Southern District of California for an order enforcing the subpoena. Young persisted in his non-compliance and the court, after a hearing adjudged him to be in contempt, but refused, however, to grant any coercive relief designed to force Young to produce the books, but instead imposed on him a fine of $50 which he paid. The Commission then appealed to the Circuit Court of Appeals, which reversed the judgment, holding that the District Court had erred in imposing a fine of $50 instead of a remedial penalty calculated to force Young to produce the documents, and rendered another judgment directing that Young be ordered imprisoned until he produced the documents. 157 F. (2) 65 (C.C.A. 9th 1946). In affirming the judgment of the Court of Appeals the Supreme Court said:

"The dual function of contempt has long been recognized— (1) vindication of the public interest by punishment of contemptuous conduct; (2) coercion to compel the contemnor to do what the law requires of him. (CITATIONS) As stated in *Bessete* v. *W. B. Conkey Co.*, 194 U.S. 324, 327, 'The purpose of contempt proceedings is to uphold the power of the court and also to secure to suitors therein the rights by it awarded." (Pp. 593–594).

". . . . . . . .

. "We agree with the Circuit Court of Appeals that at least in absence of such a finding, the refusal of the District Court

to grant the full remedial relief which the Act places behind the orders of the Commission was an abuse of discretion. . . . ." (page 592.)

"When the Circuit Court of Appeals substituted imprisonment for the fine, it put a civil remedy in the place of a criminal punishment. For the imprisonment authorized would be suffered only if the documents were not produced or would continue only so long as Young was recalcitrant. On the other hand, the fine imposed by the District Court, unlike that involved in *Fox* v. *Capital Co., supra,* pp. 106–107, was unconditional and not relief of a coercive nature such as the Commission sought. It was solely and exclusively punitive in character. Cf. *Nye* v. *United States,* 313 U.S. 33, 42–43." (Pp. 592–593.)

The same would have happened in the present case if instead of imprisonment for an indefinite term until defendant obeyed the order of the court or proved his impossibility to obey it, *Parker* v. *United States,* 153 F.(2) 66, (C.C.A. 1st 1946) the court had imposed a fine or imprisonment for a fixed term.

Since the Legislature has not provided for an adequate relief under which district courts may exercise effectively their incidental power to enforce their judgments, the courts have authority to impose the proper penalties. See, by analogy, Frankfurter and Landis, Power to Regulate Contempts, 37 Harv.L.Rev. 1010.

For the reasons stated the petition for habeas corpus is denied.

Mr. Justice Negrón Fernández did not participate herein.