**Ex parte J. C. THOMAS, Jr., Relator.**

**No. 1463.**

Court of Civil Appeals of Texas, Tyler.

Nov. 20, 1980.

Jerry Bain, Tyler, for appellant.

H. L. McGee, Jr., Tyler, for appellee.

MOORE, Justice.

This is an original habeas corpus proceeding in which J. C. Thomas, Jr., Relator, seeks relief from confinement pursuant to a commitment order issued after he was held in contempt for failure to make child support payments which accrued before the children reached the age of eighteen. We granted leave to file the petition and admitted Relator to bail pending a hearing.

Relator, J. C. Thomas, Jr., and Reba N. Ryan were divorced on July 28, 1967. The judgment awarded custody of the two minor children born of the marriage to the mother, Reba N. Ryan. The two children, Billy Lee Thomas and Bobby Michael Thomas, were born on November 1, 1952, and November 14, 1956, respectively. The decree ordered that Relator pay child support in the amount of $100 per child per month beginning on the first day of August 1967. The judgment recited that child support payments were to be paid until each child reached eighteen years of age. On April 18, 1980, after both children had reached the age of eighteen, Reba Ryan filed a motion seeking to hold Relator in contempt for failure to pay the delinquent child support payments accruing before the children reached the age of eighteen, praying that Relator be imprisoned until all

delinquent installments were paid. On September 30, 1980, the trial court found that Relator, although able to comply with the order of the court, willfully disobeyed said order by paying $7,650 less than was ordered and found him in contempt for his willful noncompliance. The contempt judgment recites as follows:

> Punishment is fixed at a fine of $500 and confinement by the Sheriff of Smith County, Texas, for a period of six (6) months. Provided however, Relator may fully purge himself ov [sic] contempt by paying into the Registry of this Court the total support arrearage in the sum of $7,650.00 plus all costs of court incurred by movant in this action for contempt, at the rate of $750.00 per month, with the first such monthly payment due on October 1, 1980, and a like sum of $750.00 on the first day of each succeeding month thereafter until the full amount of such arrearage, plus all costs of court, are paid in full.

The order further decreed that commitment was "suspended on the condition Respondent purge himself as above provided." When Relator failed to pay the $750 due on October 1, 1980, the trial court, without a further hearing, issued an order of commitment. Thereafter Relator was committed to the custody of the Sheriff of Smith County and on October 6, 1980, filed a petition for Writ of Habeas Corpus in this court alleging he is illegally confined and restrained of his liberty because the September 30, 1980, decree is void.

In his first point, Relator asserts that the trial court was without jurisdiction to hold him in contempt, in that the court's jurisdiction to enforce an order to pay unpaid child support by contempt expired when children have become eighteen years of age. Appellee has not seen fit to favor us with a brief.

It is undisputed that the two children for which child support was ordered under the original divorce decree had both reached the age of eighteen at the time the trial court found Relator in contempt. In fact, the record shows that the motion for contempt was not filed until more than five years after the youngest child had reached the age of eighteen.

At the time of the entry of the original support decree Article 4639a, Tex.Rev.Civ. Stat.Ann. (repealed), was the source of the judicial authority to make judgments concerning child support. The pertinent provisions of the statute are:

> [T]he court may by judgment, order either parent to make periodical payments for the benefit of such child or children, until same have reached the age of eighteen (18) years, or, said court may enter a judgment in a fixed amount for the support of such child or children, and such court shall have full power and authority to enforce said judgments by civil contempt proceedings after ten (10) days' notice to such parent of his or her failure or refusal to carry out the terms thereof . . . .

Under the foregoing statute, a contempt proceeding was the only means of enforcement of a valid support order. *Burger v. Burger*, 156 Tex. 584, 298 S.W.2d 119 (1957). In 1974 the legislature of this state enacted Title 2 of the Texas Family Code, section 11, et seq., Tex.Fam.Code Ann. That portion of article 4639a, supra, giving the courts authority to make judgments providing for child support was brought forward in the code. However, section 14.09 of the code expanded the enforcement authority of the court by providing that:

> (a) [a]ny order of the court may be enforced by contempt, (b) [a]ny court may enforce an order for support as provided for in Rule 308A of the Texas Rules of Civil Procedure or any subsequent version of the rule promulgated by the supreme court, and (c) [o]n the motion of any party entitled to receive payment for the benefit of a child, the court may render judgment against a defaulting party for any amount unpaid and owing after ten days' notice to the defaulting party of his failure or refusal to carry out the terms of the order.

In addition to the foregoing enforcement provisions of the Texas Family Code, the

courts of this state are authorized by statute to punish for criminal contempt by a fine of not more than $500, or by confinement in the county jail for not more than six months, or both such fine and imprisonment. Tex.Rev.Civ.Stat.Ann. article 1911a, section 2(a) (Supp.1979).

Before proceeding further, we find it necessary, as we shall see later, to determine whether the contempt proceeding in the present case is to be classified as a criminal or civil contempt proceeding. The distinction between criminal and civil contempt is ably discussed in *Ex parte Hasken*, 480 S.W.2d 18, 22 (Tex.Civ.App.—Beaumont 1972, no writ), wherein the court stated:

> The line of demarcation between civil contempt and criminal contempt is not so clear. The textwriter in 17 C.J.S. Contempt § 5(2), p. 12, says that the line is "not always clear" and is "in hopeless confusion." Nevertheless, we are told that "[i]t is the nature of the relief asked that is determinative of the nature of the proceeding." *Penfield Co. v. Securities & Exch. Com.*, 330 U.S. 585, 590, 67 S.Ct. 918, 921, 91 L.Ed. 1117 (1947); *Shillitani v. United States*, supra (384 U.S. [364] at p. 368, 86 S.Ct. 1531 [at p. 1534, 16 L.Ed.2d 622]). See also, *Gompers v. Buck's Stove & R. Co.*, 221 U.S. 418, 449, 31 S.Ct. 492 [501], 55 L.Ed. 797 (1911). *Shillitani*, supra, follows the rationale of *Gompers*.

The textwriter in 17 Am.Jur.2d, Contempt, § 4, p. 7, states the rule in this manner:

> "Where the primary purpose is to preserve the court's authority and to punish for disobedience of its orders, the contempt is criminal. Where the primary purpose is to provide a remedy for an injured suitor and to coerce compliance with an order, the contempt is civil."

Coercive imprisonment to enforce compliance with an order of the court is civil in nature. If the party charged in the proceeding had chosen to obey the order, he would not have faced jail. And, it has been said that in such instances, the defendants "carry the keys of their prison in their own pockets." *In re Nevitt*, 117 F. 448, 461 (CCA 8th Cir. 1902). In such an instance, ordinarily the defendant may procure his release by compliance with the provisions of the order of the court. This is the rule prevailing in Texas, having been adopted by our Supreme Court in *Ex parte DeWees*, 146 Tex. 564, 210 S.W.2d 145, 147 (1948), and reaffirmed in *Ex parte Ramzy*, 424 S.W.2d 220, 224 (Tex.Sup.1968).

Where the primary purpose of the proceeding is to vindicate public authority, the proceeding is usually denominated criminal. The action is punitive in nature. *Nye v. United States*, 313 U.S. 33, 43, 61 S.Ct. 810 [813], 85 L.Ed. 1172 (1941); *Bloom v. Illinois*, 391 U.S. 194, 201, 88 S.Ct. 1477 [1481], 20 L.Ed.2d 522 (1968). Ordinarily, the punishment is fixed and definite and no subsequent voluntary compliance on the part of the defendant can enable him to avoid punishment for his past acts.

In the instant case the nature of the relief asked was to coerce compliance with the 1967 support order. This is not a proceeding where the state was a party in which it was seeking to vindicate the public interest. The proceeding here is between the parties to the original support order where the only relief sought by the petitioner was to coercively enforce by contempt the court's prior order for support. In view of this, any order by the court attempting to punish Relator solely for the disobedience of the support order would have been inappropriate. *Penfield Co. v. Securities and Exch. Com.*, supra. The fact that the petitioner sought only coercive compliance with the support order and the fact that the order itself provided that Relator could procure his release by compliance with the provisions of the order, show that the proceeding under review was civil or coercive in nature rather than criminal or punitive.

The order not being criminal or punitive in nature, the question of whether the trial court had the power to punish Relator for

criminal or punitive contempt for disobedience of the order after the children reached the age of eighteen is not before us.

This brings us to the question of whether the trial court had the power to enforce compliance with the 1967 support order by civil or coercive contempt proceedings. The answer to this question turns upon whether the underlying 1967 support order terminated and expired when the youngest child reached the age of eighteen or whether it continued to be a viable order until the coercive contempt judgment was rendered on September 30, 1980. If the underlying support order terminated and expired by its own terms when the youngest child reached eighteen, such order was void and it therefore follows that the trial court lost jurisdiction to coercively enforce compliance therewith. If the underlying support order remained viable, the trial court retained jurisdiction and had the power to enforce the same by contempt.

The purpose of the 1967 support order was to provide for the necessities of the children until they reach the age of eighteen. When the event occurred which marks the outer limits of time within which support payments can be required, the court loses jurisdiction of the subject matter and can no longer enforce such payments by civil contempt. After they reached eighteen the court was no longer concerned with their support. At the time the contempt proceeding was heard the support order was functus officio, that is, it expired by its own terms, it having accomplished its purpose.

■ In *McCullough v. McCullough*, 483 S.W.2d 869, 870 (Tex.Civ.App.—Tyler 1972, no writ), which was decided prior to the adoption of the Texas Family Code, this court held that the trial court was without jurisdiction to coercively enforce a support order by contempt proceedings on accrued unpaid installments commenced after the children reached the age of eighteen. We adhere to the ruling made in *McCullough v. McCullough*, supra.

The vast majority of the courts of last resort of other states hold that the trial court does not have jurisdiction to enforce its order to pay child support by contempt proceedings on accrued unpaid installments commenced after the child has reached the age of majority as set by statute. See the cases collated in *McCullough v. McCullough*, supra.

In *Corbridge v. Corbridge*, 230 Ind. 201, 102 N.E.2d 764, 767 (1952), the Supreme Court of Indiana explained the reason for its ruling by saying:

The extraordinary remedy of attachment for a civil contempt of court is available, not for the protection of the one having custody of the child, but for the benefit of the child, so that it may not want for necessities during the period of its minority. When the child reaches its majority the purpose and justification for the extraordinary remedy cease, and the court has no right to coerce the back payments of support by imprisonment.

The fact that our Legislature, in 1974, enacted section 14.09 of the Family Code which bestowed upon a party entitled to receive the support payments the right to a judgment against the defaulting party, reinforces our conclusion that the legislature recognized that the extraordinary power of the court to punish for contempt terminated with the child's attaining the age of eighteen and therefore enacted section 14.-09. to remedy the situation.

■ The provision of the Texas Family Code, Section 14.09(a) and (b), authorizing the courts to coercively enforce by contempt for the violation of the court's orders ceases in support cases when the child reaches the age of eighteen. Inasmuch as the trial court ceased to have jurisdiction of the subject matter made the basis of petitioner's claim, the court had no power or jurisdiction to enforce the support order by contempt proceedings commenced after the youngest child reached eighteen. It follows that the contempt order is void.

Accordingly, it is the order of this court that Relator, J. C. Thomas, Jr., be discharged from the custody.