MOORE ET AL. *v.* BROWN ET AL.

No. A-195. Decided September 5, 1980

MR. JUSTICE POWELL, Circuit Justice.

The applicants, the Mobile County School Board and its Commissioners, request that I stay a preliminary injunction entered by the District Court in another phase of the litigation over the composition of the Board. The injunction ordered Alabama election officials to conduct district rather than at-large voting to fill School Board vacancies.

This Term, in *City of Mobile* v. *Bolden,* 446 U. S. 55 (1980), this Court considered a constitutional challenge to Mobile's system of at-large elections for City Commissioners. MR. JUSTICE STEWART wrote for a plurality of four Justices and concluded that the plaintiffs were required to prove a racially discriminatory *purpose* to show that Mobile's at-large voting system violated the Fourteenth Amendment. The District Court, by contrast, had thought it sufficient to show that the existing election system had the *effect* of impeding the election of blacks. The Court of Appeals for the Fifth Cir-

cuit had affirmed.[1]   Because we disagreed with the analysis of the District Court and Court of Appeals, we reversed and remanded for further proceedings.

*Bolden*'s companion case, *Williams* v. *Brown,* 446 U. S. 236 (1980) (*Brown I*), involved at-large elections for the School Board.   In that case as well, the District Court and Fifth Circuit had held unconstitutional a system of at-large elections, relying on analysis similar to that used by them in *Bolden*.   We therefore vacated the judgment and remanded for further proceedings in light of *Bolden*.   Approximately 11 weeks later, the Court of Appeals in turn vacated the decision of the District Court and remanded the case to it.

## I

The Alabama Legislature created the Mobile County Board of School Commissioners in 1826.   Commissioners then were elected at large.   That practice has continued to the present day.[2]   Under current law, the Board is composed of five persons who serve staggered 6-year terms.   The at-large election system contains no obstacle to ballot access by blacks.   In *Brown I*, however, the District Court nevertheless concluded that the system of at-large elections "diluted" the effectiveness of black votes.   The court ordered a phased-in system of district elections to increase the likelihood that blacks would be elected to the Board.   Under the District Court's plan, Mobile County was divided into five districts.   Two of the district seats were filled in elections in 1978.[3]   Another dis-

---

[1] Although recognizing that a discriminatory purpose had to be proved, the Court of Appeals had thought that the "aggregate" of discriminatory effects was sufficient to establish a discriminatory purpose.

[2] In 1975, after this suit was filed, the state legislature passed a local Act restructuring the Board into five single-member districts.   A state court subsequently held that the Act violated the Alabama Constitution because of a defect in its publication.

[3] On August 29, 1978, I denied an application to stay the District Court's plan pending review by this Court.

trict seat was scheduled to be filled in an election this fall. The two remaining district seats were to be filled in 1982.

Under the District Court's original plan, however, the introduction of district seats did not necessarily correspond to the expiration of incumbents' terms of office. Only one at-large seat expired in 1978, but two new district seats were added that year.[4] Thus, since 1978 the Board has operated with six members rather than five. The District Court therefore ordered one of the at-large Commissioners whose term is to expire in 1980 to act as the nonvoting "chairman" of the Board during the remainder of his term.[5]

In sum, at the time we vacated the District Court's original plan, the Board contained six members, two of whom had been elected from districts pursuant to the plan. Two at-large seats were due to expire this fall, and one new district member would be elected. Thus, the coming election would have resulted in a return to a five-member Board, three of whom would have been elected from districts.

## II

Controversy has followed our decision vacating the District Court's original district election plan. At least some of the at-large Commissioners thought that our decision in effect invalidated the election of the two district Commissioners chosen in 1978. Accordingly, some persons refused to acknowledge the legitimacy of the votes of the district members. Under these circumstances, the Board is reported to have been paralyzed since April.

The District Court reassumed jurisdiction over the case on July 11, 1980. Two primary issues confronted the court. First, as I have noted, substantial dispute had arisen over the legitimacy of the two 1978 district elections. Board members disagreed with one another, not only substantively, but also

---

[4] A black was elected to each district seat in 1978.

[5] The nonvoting "chairman" did have the power to break ties.

on the threshold question of whether two of their number were even official Board members at all. In sum, the Board could not function. The District Court resolved the deadlock by holding that the 1978 winners remained the official Board members.

The second issue concerned future elections. Under the District Court's original plan, one district election was to have been held in 1980, and two at-large seats were to expire. The district primary was scheduled for Tuesday, September 2, and the general election for November 4. Without taking evidence or making findings of fact, the District Court on July 25 entered a preliminary injunction that would, as the court characterized it, "preserv[e] the status quo pending a decision on remand." The injunction reinstated the district election plan that we had vacated in April. The injunction was appropriate, according to the District Court, because plaintiffs would be irreparably harmed if the at-large election were held. Holding the district election, by contrast, would not impose significant harm on defendants or on the public interest. Finally, the court thought that the plaintiffs had "a substantial likelihood" of eventually prevailing on the merits.

Defendants—applicants here—sought a stay of the injunction pending appeal. Specifically, they asked that the District Court enjoin the district election scheduled for this fall, and permit the two at-large members now on the Board to continue to serve past the normal expiration of their terms. The District Court denied the requested stay on August 19. Defendants next asked the Fifth Circuit to stay the preliminary injunction. On August 26, that court denied the stay without opinion. Late Thursday, August 28, defendants applied to me to stay the preliminary injunction.

### III

I have serious concerns about the process and reasoning underlying the District Court's entry of a preliminary injunction. The District Court and the Court of Appeals in *Brown*

*I* had invalidated the at-large election law and imposed a system of district elections. We vacated their judgment, and remanded the case for further proceedings. On remand, the District Court purportedly acted to preserve the status quo *pendente lite*, but did so by reinstating its own election plan that we had vacated. After our remand, I would have thought that the slate was wiped clean until there had been further evidence, or at least fresh findings of fact. Until then, the status quo was the presumptively valid election system provided by Alabama law—not the judge-made election plan that we had vacated.

I also was troubled by two additional elements of the District Court's analysis. First, it concluded that the balance of harms heavily favored entering the preliminary injunction. The court seemed to perceive little or no harm to the defendants, and to the public interest, resulting from reinstatement of the judge-created election plan. The court's injunction, however, imposes on Mobile County a method of selecting its School Board members that had not been enacted by state or local elected representatives. While the preliminary injunction is in effect, district elections will be held. These elections may produce—indeed, the District Court intended that they produce—Commissioners who would not have been elected under the longstanding system of at-large elections. As MR. JUSTICE STEVENS observed, "the responsibility for drawing political boundaries is generally committed to the legislative process." *City of Mobile* v. *Bolden,* 446 U. S., at 91 (concurring opinion). The District Court appeared to ignore the fact that altering the voting system established by Alabama law more than a century ago, and since maintained, is a substantial intrusion on local self-government.

Second, the court concluded that plaintiffs had "a substantial likelihood" of success on the merits. Yet, the court made no finding of fact, nor indeed alluded to any fact known to it, to justify that conclusion. Compare Fed. Rule Civ. Proc. 52 (a) ("in granting or refusing interlocutory injunctions the

court shall . . . set forth the findings of fact and conclusions of law which constitute the grounds of its action"). Nor did the District Court explain how the plaintiffs would prove a purposeful violation of constitutional rights as required by the plurality's decision in *Bolden*.[6] Indeed, although we had directed that proceedings on remand be conducted in light of this Court's decision in *Bolden,* our opinion in that case was not mentioned in the District Court's opinion.

## IV

It may well be, for the reasons stated above, that the District Court erred in entering the preliminary injunction.[7] The court at least offered unsatisfactory reasons for its decision. Yet, I am reluctant to stay the effect of the injunction. The parties agree that, at this late date, if an election is to occur this fall at all, it must be the district election ordered by the District Court.[8] The applicants therefore urge me to grant a stay that would prevent holding any election at all, and to keep in office, until an at-large election can be held, the incumbents whose terms are due to expire. In *Times-Picayune*

---

[6] Moreover, in *Brown I,* the District Court itself had recognized that, in general, it is "a difficult task" to prove "overt racial considerations in the actions of government officials." App., O. T. 1979, No. 78–357, p. 30a.

[7] This opinion is not intended to convey any doubt about the legitimacy of the status of the two Commissioners elected in 1978 pursuant to the District Court's then-operative district election plan. The applicants do not challenge that aspect of the District Court's order.

[8] As often happens (and for reasons that rarely are explained) emergency applications with respect to elections reach us on the eve of the weekend before the election. This places the Court, or the Circuit Justice (as is usually the case), in the unwelcome position of ruling under serious time constraints on the validity of an election that has been planned for months. This is an example. The application was presented to me less than five full days (including the Labor Day weekend) before the scheduled primary election. Had proceedings on remand moved more expeditiously, it might have been possible to hold this fall the at-large elections envisioned by Alabama law.

*Publishing Corp.* v. *Schulingkamp,* 419 U. S. 1301, 1305 (1974) (POWELL, J., in chambers), I summarized the principles that normally guide a Circuit Justice in considering a request for a stay. Although applicants here forcefully argue that the *Times-Picayune* requirements are fully met, I have concluded not to stay the injunction. A Circuit Justice should exercise restraint before staying an interim order entered by a District Court and affirmed by a Court of Appeals.[9] This caution seems especially pertinent where a scheduled election would be enjoined. Thus, in the posture in which this case now comes to me—and in light of the unacceptable alternative of enjoining the fall election and retaining in office incumbents whose terms have expired—I decline to stay the preliminary injunction.[10]

---

[9] Just recently, I commented:

"A Circuit Justice should not disturb, 'except upon the weightiest considerations, interim determinations of the Court of Appeals in matters pending before it.' *O'Rourke* v. *Levine,* 80 S. Ct. 623, 624, 4 L. Ed. 2d 615, 616 (1960) (Harlan, J., in chambers). The reasons supporting this reluctance to overturn interim orders are plain: when a court of appeals has not yet ruled on the merits of a controversy, the vacation of an interim order invades the normal responsibility of that court to provide for orderly disposition of cases on its docket." *Certain Named and Unnamed Noncitizen Children* v. *Texas, ante,* at 1330–1331 (in chambers).

[10] Because of the time constraints that I have mentioned, see n. 8, *supra,* I issued an order denying the stay on Friday, August 29, reserving the right subsequently to file this opinion.