**Lelila G. BROWN, et al., Plaintiffs,**

v.

**John L. MOORE, et al., Defendants.**

Civ. A. No. 75–298–P.

United States District Court,
S.D. Alabama, S.D.

March 28, 1984.

Kenneth L. Thomas, Massey, Means & Thomas, Montgomery, Ala., for movant R.W. Gilliard.

Robert G. Kendall, Johnston, Johnston & Kendall, Mobile, Ala., for defendant Dan C. Alexander.

Robert C. Campbell, III, Sintz, Pike, Campbell & Duke, Mobile, Ala., for defendant Bd. of School Com'rs of Mobile County.

## OPINION AND ORDER ON MOTION FOR FURTHER RELIEF

PITTMAN, Senior District Judge.

This matter is before the court on the motion of Dr. Robert W. Gilliard (Gilliard) for further relief in the above-captioned matter. A hearing was held on the motion, at which time evidence was taken and arguments of counsel were heard, and the matter was taken under submission.

---

1. Alexander's position terminated November 14, 1983.

2. This court dismissed Gilliard's claims against Alexander in his individual capacity by order dated November 3, 1982.

3. This court's judgment on remand was entered April 15, 1982, enjoining the defendants from holding elections under the at-large system. *Brown v. Board of School Commissioners,* 542

## OPINION

### 1. *Findings of Fact*

This voter dilution case was brought against the five-member Board of School Commissioners of Mobile County, *et al.* (the Board) challenging the at-large method of electing Board members. This court's original opinion and order found that the plaintiffs, black citizens of Mobile County, had suffered an impermissible dilution of their voting strength, *Brown v. Moore,* 428 F.Supp. 1123, 1142 (S.D.Ala.1976), and provided for elections in November, 1978 of Board members from two predominantly black single-member districts, *id.* at 1146 (Districts 3 and 4). Gilliard, a black male citizen of Mobile County, was elected to the Board from District 3 on November 7, 1978, and has served continuously in that capacity to the present.

Dan C. Alexander (Alexander), a white male citizen of Mobile County, held, at all times material herein,[1] the position of non-voting Chairman of the Board.[2] *See Brown,* 428 F.Supp. at 1145–46.

This court's original opinion and order was affirmed by the Fifth Circuit, *Brown v. Moore,* 575 F.2d 298 (1978), and reversed by the Supreme Court, *Williams v. Brown,* 446 U.S. 236, 100 S.Ct. 1519, 64 L.Ed.2d 181 (1980). This court received on July 11, 1980 the mandate of the Fifth Circuit dated July 9, 1980. The plaintiffs petitioned on July 15, 1980, for a preliminary injunction preserving the status quo pending decision on remand. In an order dated July 25, 1980, this court enjoined the defendants, pending entry of final judgment on remand,[3] from failing to abide by the following provision, *inter alia:*

    A. Commissioners Cox and Gilliard shall continue to enjoy all the rights,

---

F.Supp. 1078 (S.D.Ala.1982). In that order the status quo was again maintained. *Id.* at 1107 ("The membership of the school board will remain as it is presently operating until further orders of this court."). The Eleventh Circuit and Supreme Court affirmed. *Brown v. Board of School Commissioners,* 706 F.2d 1103 (11th Cir.1983), *aff'd,* — U.S. —, 104 S.Ct. 520, 78 L.Ed.2d 705 (1983).

privileges and duties of the office of School Commissioners of Mobile County to which they were elected in 1978.

On November 4, 1981, a proposed interim consent decree to be entered in *Davis v. Board of School Commissioners*, No. 3003–63–H (S.D.Ala.) was placed on the Action Board Agenda of a duly called meeting of the Board. The *Davis* case concerns the desegregation of the Mobile County public school system. The proposed decree contemplated, *inter alia*, the formation of a three-member professional observation team of consultants and a Special Committee of representatives appointed by PTA groups and the parties to the suit; both groups were to be formed for the purpose of assisting in the resolution of the issues arising out of the *Davis* case.

The minutes of the November 4, 1981 meeting reflect that Gilliard moved to approve, for the purpose of discussion, the proposed interim consent decree as presented by the Board attorney. Later in the meeting, Gilliard expressed an interest in the proposed decree as a means to put an end to the litigation proceedings. The following colloquy thereupon took place:

MR. ALEXANDER: Now Dr. Gilliard I would like for you to state publically [sic] once and for all, in the last month have you talked to Mr. Blacksher [4] about this Birdie Mae Davis Case?

DR. GILLIARD: I talked to Mr. Blacksher about three months ago.

MR. ALEXANDER: About the Birdie Mae Davis Case?

DR. GILLIARD: Well, roughly yes ...

MR. ALEXANDER: Yes, sir.

DR. GILLIARD: Roughly ...

MR. ALEXANDER: Yes.

DR. GILLIARD: Yes.

MR. ALEXANDER: I therefore as Chairman of this Board I refuse to accept any votes that you make on this issue at any time. You are in a direct conflict of interest it is ...

\*   \*   \*   \*   \*   \*

The minutes of the meeting further reflect that Alexander refused to accept Gilliard's prior motion on the grounds that Gilliard was precluded from voting in this matter.

Later in the same meeting, Alexander stated that he was concerned about Board appointments to the proposed committee while two members of the Board were also members of the *Davis* plaintiff class and one member of the Board (Gilliard) has been head of the National Association for the Advancement of Colored People (NAACP), an organization involved in the *Davis* lawsuit.

At subsequent Board meetings on December 9, 1981 and January 13, 1982, Alexander reiterated his position that Gilliard would not be allowed to vote in connection with the appointment of representatives to the committee contemplated by the proposed interim consent decree.

During a meeting of the Board on January 27, 1982, from which Alexander was absent, the following statement written by Alexander was read into the minutes of the meeting:

"They can do whatever they want to do as far as approving the concept of the settlement. Who can and cannot vote on the committees and the consultants remains the same. I want it clearly understood that when we get around to appointing the committee and consultants I clearly stated who can vote and cannot vote."

Commissioner Bosarge, as acting chairman in the absence of Alexander, accepted Gilliard's vote on the motion of Commissioner Berger "to approve the concept of the redrafted consent decree in the Birdie Mae Davis Case."

Finally, on June 23, 1982, at a meeting of the Board wherein Agenda Item Number 15, "Birdie Mae Davis Special Activities" was discussed, Alexander explicitly refused to recognize Gilliard's vocal vote on the matter.

---

**4.** Attorney J.U. Blacksher represents the plaintiffs in this case and in the *Davis* case.

The court finds that Gilliard was at all material times herein and is still president of the local chapter of NAACP. The *Davis* suit was not brought by NAACP, nor has NAACP ever been a party to the *Davis* suit, although the plaintiff class is represented of counsel by the NAACP Legal Defense Fund. The local branch of NAACP has never been a party to the *Davis* suit, nor has it made financial contributions to the prosecution of the *Davis* case. At no time material herein did Gilliard have children in the Mobile County public school system, nor does he have children in the system at present. Gilliard has no financial interest in the prosecution of the *Davis* case.

The court further finds that Alexander, prior to the events material herein, had applied for and received from the Alabama State Ethics Commission an Advisory Opinion, No. 424, April 24, 1980, concerning possible conflict between Gilliard's involvement with the local branch of NAACP and his membership on the Board. The Commission found that Gilliard had not violated the provisions of the Alabama Ethics Act, Ala.Code §§ 36–25–5(a), –6, and –7(a) (1975) by voting to oppose Board intervention in the *Davis* case. The Commission reasoned that absent evidence that Gilliard's vote resulted in "direct personal financial gain" he had not violated the ethics law by voting on issues concerning the *Davis* case, in spite of his status as president of the local branch of NAACP.

### 2. *Conclusions of Law*

The court has jurisdiction over this matter based on ancillary jurisdiction. This suit originally was brought to challenge the at-large method of electing members of the Board. 428 F.Supp. at 1125. Jurisdiction exists over this original challenge under 28 U.S.C. §§ 1343(3)–(4) and 2201. *Id.* This court has retained jurisdiction for the implementation of its remedial order. *Id.* at 1146. Ancillary jurisdiction extends to those acts that federal courts must take in order to carry out its judgments in matters to which it has jurisdiction. 6 C. Wright,

A. Miller & E. Cooper, Federal Practice and Procedure § 3523, at 60 (1975) (hereinafter Wright & Miller). Central to this court's remedial orders in this case is the election of Board members from single-member districts, *see* 428 F.Supp. at 1146, and the maintenance in the district-elected members of the rights, privileges and duties of their office, *see Brown v. Moore,* 448 U.S. 1335, 101 S.Ct. 16, 65 L.Ed.2d 1158 (S.D. Ala.1980) (Order on Motion for a Preliminary Injunction Preserving Status Quo Pending Final Judgment on Remand) at 7. Ancillary jurisdiction exists over this motion seeking to preserve those rights.

This court has sought to modify the laws of the State of Alabama with respect to the Board only to the extent necessary to meet constitutional mandate. *See, e.g.,* 428 F.Supp. at 1144. The law of Alabama governs the rights, privileges and duties of Board members to the extent not inconsistent with constitutional directives. However, this court need not abstain from addressing the issues presented in this motion simply because they are rooted in state law. This motion does not fall within any of the recognized abstention doctrines. *See generally* Wright & Miller, §§ 4241–48. Nor is this a case wherein certification would be necessary. *See generally id.* at § 4248.

Alexander argues that this motion should have been brought in the *Davis* case. While the controversy between Gilliard and Alexander involves Board voting on aspects of the *Davis* case, the issue is whether Gilliard's vote was improperly disallowed. Because Gilliard was elected from a single-member district pursuant to remedial orders issued in this case, this case is clearly a proper forum for an adjudication of the rights, privileges and duties that attend to Gilliard's office.

■ Conflicts of interest are governed by the Alabama Ethics Act, Ala.Code §§ 36–25–5(a), –6, and –7(a) (1975), which provides as follows:

No public official or employee shall use an official position or office to obtain direct personal financial gain for himself,

or his family, or any business with which he or a member of his family is associated unless such use and gain are specifically authorized by law.

\* \* \* \* \* \*

No person shall offer to or give to a public official or employee or his family, and none of the aforenamed shall solicit or receive anything of value, including a gift, favor or service or a promise of future employment, based on any understanding that the vote, official actions, decisions or judgment of the intended recipient or family member would be influenced thereby. Expenses associated with social occasions afforded public officials and employees shall not be deemed a thing of value within the meaning of this section or prohibited hereby.

\* \* \* \* \* \*

No public official or employee or his family shall solicit or receive any money in addition to that received by the official or employee in his official capacity for advice or assistance on matters concerning the legislature, an executive department or any public regulatory board, commission or other body.

There is no evidence in this case of any violation of the Alabama Ethics Act by Gilliard in connection with his involvement in the *Davis* case. Gilliard did not use his office to obtain any direct personal financial gain. There is no evidence that Gilliard received anything of value in exchange for any vote or other influence as a Board member. This court concludes that Gilliard was not in violation of the Alabama Ethics Act.

Alexander argues that because Gilliard was a member of the plaintiff class in *Davis* and because he had had conversation with plaintiffs' counsel in *Davis* a conflict of interest existed precluding Gilliard from voting in matters pertaining to the *Davis* case. This assertion is without merit. Based on the evidence, this court concludes that at no time was Gilliard a named plaintiff in *Davis*. Although Gilliard is black, he has had no children in the Mobile County public school system at any time materi-

al herein. Although Gilliard was and is president of the local chapter of NAACP, neither the local chapter nor the national NAACP is a party to the *Davis* suit. The local branch has not made any financial contribution to the prosecution of the *Davis* case. The only connection of NAACP with *Davis* is the fact that the NAACP Legal Defense Fund has served as counsel to the plaintiff class.

In making these assertions, Alexander has sought to apply an erroneous standard of conduct to Gilliard's involvement. Alexander cites *State v. Aldridge*, 212 Ala. 660, 103 So. 835 (1925) for the proposition that pecuniary interest in the result of a matter is not the only disqualifying interest for a member of the Board of Accountancy sitting on the question of a revocation of a certificate of accountancy. The standards articulated in that case deal with a board acting in a judicial capacity. It has been recognized that school boards perform executive, legislative, and judicial functions. *See generally Wood v. Strickland*, 420 U.S. 308, 319, 95 S.Ct. 992, 999, 43 L.Ed.2d 214, 223 (1975). The vote in the present matter was not a judicial function; indeed, the fairness of any consent decree is determined by the judge who presides over the case, who would be the judge of this court presiding in the *Davis* case. *See, e.g., United States v. Texas Education Agency*, 679 F.2d 1104, 1108–09 (5th Cir.1982). In this political capacity, Gilliard should not be held to a judicial standard of conduct. Under Alexander's strained analysis, any politically active black person would be effectively precluded from full participation as a member of the Board. This is not the intent of the Alabama Ethics Act, as has already been expressed by the State Ethics Commission.

It would be ironical to give relief to a plaintiff class and then in the exercise of those rights hold one of them could not vote on the very issues at the heart of the relief given. In this case, the black plaintiffs had been constitutionally denied the right to hold elective office under the at-large system because of the unconstitution-

al dilution of the black vote. Approximately 44% of the children are black in the Mobile County school system under the Board. To hold that Dr. Gilliard, one of the leaders in the Mobile County black community struggling to exercise their civil rights, could not give his voice and vote on the very issues of which the school board members are most concerned would make a mockery of the relief given, in the absence of financial gain to him.

This court thus concludes that Gilliard's interest in the *Davis* case was not, as a matter of Alabama law, in conflict with his right to vote on matters pertaining to that case. Alexander was, at the time, enjoined from failing to allow Gilliard to enjoy all the rights, privileges and duties of the office to which Gilliard had been elected; this court concludes that Alexander's actions were in violation of that injunction. Having found that Alexander violated this injunction, this court need not address Gilliard's claim that Alexander violated his constitutional right of association.

Subsequent to the hearing on this motion, Alexander's position as Chairman of the Board terminated. He is not now a member of the Board. Because this motion was brought against Alexander in his official capacity, this order will apply to his successor in office, Judy McCain.

Gilliard's motion includes a prayer for contempt citations. Civil contempt citations are employed "as coercive sanctions to compel the contemnor to do what the law has made it his duty to do." *Penfield Co. v. SEC*, 330 U.S. 585, 590, 67 S.Ct. 918, 921, 91 L.Ed. 1117 (1947). As this court has noted, Alexander's position as chairman has terminated. Coercive sanctions would be improper at this point and will be denied.

Gilliard's prayer for punitive damages has been severed from the non-jury issues for determination by a jury.

A hearing will be scheduled for determination of Gilliard's prayer for attorney's fees.

ORDER

It is therefore ORDERED, ADJUDGED and DECREED that defendant Dan C. Alexander's successor in office, Judy McCain, her agents, servants, employees, and successors and those acting in concert with her or at her direction are hereby ENJOINED:

(1) from precluding Commissioner Robert W. Gilliard from voting on issues pertaining to the case of *Davis v. Board of School Commissioners*, No. 3003–63–H (S.D.Ala.); and

(2) from failing to recognize the vote of Commissioner Robert W. Gilliard on issues pertaining to the case of *Davis v. Board of School Commissioners*, No. 3003–63–H (S.D.Ala.).

It is further ORDERED, ADJUDGED and DECREED that Gilliard's prayer for contempt citations be and hereby is DENIED.

This court hereby retains jurisdiction over the remaining issues of attorney's fees and punitive damages.

Costs are taxed against the defendants.